**In re Kathleen A. JABLONSKI a/k/a Kathleen A. Peterson, Debtor.**

**Bankruptcy No. 85–03026K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 19, 1987.

Irwin Trauss, Philadelphia, Pa., for debtor.

Lawrence T. Phelan, Philadelphia, Pa., for Mortgagee.

James J. O'Connell, Philadelphia, Pa., for Trustee.

Kathleen A. Jablonski, pro se.

## MEMORANDUM SUR DEBTOR'S MOTION FOR RECONSIDERATION OF OPINION AND ORDER DATED JANUARY 9, 1987

DAVID A. SCHOLL, Bankruptcy Judge.

On January 20, 1987, the Debtor filed a timely[1] Motion that we reconsider certain portions of our Opinion and Order of January 9, 1987, in which we ruled upon an Objection of the Debtor to the Proof of Claim of the Debtor's Mortgagee, now known as Meritor Mortgage Corporation East (hereinafter referred to as "the Mortgagee"), and a Motion of the Debtor to determine the value of the secured interest of the Mortgagee in the interest of the Debtor's estate in residential real estate which she owns by the entireties with her husband.

We carefully reviewed the Debtor's Motion and we conclude that it must be denied except as to one issue, i.e., our ruling that the Mortgagee was entitled to its claim of a "legal fee" of $1,100.00 and costs of $350.80, totalling $1,450.80. We therefore entered an Order on February 3, 1987, vacating our Opinion and Order insofar as it allowed these fees and costs in the Mortgagee's Proof of Claim, and accorded the parties until February 11, 1987, to file Supplemental Briefs addressing this issue. The Mortgagee opted not to file a Brief, and the Debtor belatedly filed a Brief that addresses issues which, as it develops, were totally irrelevant to our ultimate disposition.

Despite this lack of assistance from either party, we conclude that we must revise our ruling of January 9, 1987, on the issue of allowable fees and costs. We now hold that since the Mortgagee has not met its burden of showing that any such fees and costs can be allowed per 11 U.S.C. § 506(b), we must deny this portion of the Mortgagee's Claim.

Our prior ruling was based exclusively on our misperception that a pre-petition state court foreclosure judgment had been entered against the Debtor and that, therefore, the Opinion of former Chief Judge Lord of the District Court in *Werts v. Federal National Mortgage Ass'n.*, 48 B.R. 980, 985 (E.D.Pa.1985), was relevant to the disposition of this issue. That such a pre-petition judgment had been entered was not an irrational presumption, because letters warning the Debtor of the institution of foreclosure proceedings were dispatched as early as 1982, and the Debtor did not file her bankruptcy case until July 24, 1985. However, there is certainly nothing in the record to support this presumption, and moreover, it was erroneous, as counsel for both parties concede. We therefore cannot base our decision on *Werts,* and we do not believe that the holding in *Werts* can be directly or analogously applied to a situation where not only has no pre-petition foreclosure judgment been entered, but there is nothing in the record which indicates that any pre-petition foreclosure proceeding had even been commenced.

We note that a change in our ruling on this issue results in some alteration of several portions of our previous Opinion and Order. We shall therefore proceed to vacate the Opinion and Order in its entirety, and resubmit same in its entirety. We do note that, except for a few minor corrections elsewhere, only pages 1 and 17–22 of

---

**1.** Although filed at, not the eleventh hour, but the stroke of the midnight hour, i.e., 5:00 P.M. on January 20, 1987, this Motion is timely per Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e), because it was served on January 20, 1987, and this was the last day for so doing because January 19, 1987, was a legal holiday. *See Parks v. "Mr. Ford,"* 68 F.R.D. 305, 307–09 (E.D.Pa.1975), *rev'd on other grounds,* 556 F.2d 132 (3d Cir.1977) (en banc).

our previous Opinion and, of course, the Order, are altered.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Before us in the instant matter are Motions of the Debtor (1) Objecting to the Proof of Claim filed by the Debtor's mortgagee, formerly known as Central Mortgage Corporation, and now known as Meritor Mortgage Corporation East (referred to hereinafter as "the Mortgagee"); and (2) "to Determine the Value of Debtor's Interest in Property and to Avoid Its [the Mortgagee's] Lien," relative to the Debtor's residential real estate, owned by the entireties with her husband, Harry Jablonski, at 2221 Taggart Street, Philadelphia, PA 19125. We hold that, on the basis of the Stipulation of Facts which the parties have agreed shall constitute the record in this matter, we can only proceed to reduce the Mortgagee's Proof of Claim by the amount of an agreed $1,000.00 penalty for a violation of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.* (TILA), and by $1,450.80 of alleged attorney's fees and costs, to $6,888.53, and declare that the Mortgagee's lien in the Debtor's premises is limited to the extent of $19,350.00.

On July 24, 1985, the Debtor, though married, filed, individually, a Petition seeking relief under Chapter 13 of Title 11, United States Code. On October 16, 1985, the Mortgagee filed a Proof of Claim setting forth a "Reinstatement Amount" of arrearages totalling $9,339.33, and a "Total Debt" amounting to $24,273.54. The arrearages computation included, as components, $7,888.53 in monthly payments and late charges; and "legal fee" and costs of $1,100.00 and $350.80, respectively, the source of which was not explained further. The "total debt" figure included a principal balance of $15,660.38, pre-petition interest of $6,107.40, late charges of $303.42, an "escrow deficit" of $751.54, and the "legal fee" and costs cited above, which together total $1,450.80.

On February 13, 1986, the Debtor filed the Motions in issue. In the Motion to determine the value of the Mortgagee's Claim and to avoid its lien in part, the Debtor claimed that (1) The value of the realty in issue was $20,000.00; (2) The value of the Debtor's interest as co-tenant by the entireties was half of this amount, or $10,000.00; and (3) The $10,000.00 figure should be further reduced to $9,450.00, in view of the existence of two (2) prior City liens, for taxes and water and sewer, in the amounts of $450.00 and $200.00, respectively.[1] In the Objection to the Proof of Claim, the Debtor, starting with the $9,450.00 figure, contended that the Mortgagee's "total debt" claim was properly a secured claim of $8,450.00, having deducted $1,000.00 for the recoupment claim for the TILA violation; and an unsecured claim of $6,210.38. The Debtor also contended that an alleged failure of the Mortgagee to comply with certain federal Regulations and state law in the state court foreclosure case precluded any valid claim for the "legal fee," or attorney's fees, and costs.

The Mortgagee filed Answers contesting these Motions on February 28, 1986, and March 12, 1986, respectively. The matters were scheduled for hearing two (2) times, but, on the latter occasion, the Motions disappeared from the Court listings with the notation "continued generally—Stipulation to be filed" on May 22, 1986.

These matters first came to our attention on October 15, 1986, when a Motion by the Chapter 13 Trustee to dismiss the Debtor's case due to the apparent infeasibility of her Plan came before us for disposition. We learned that the Trustee's Motions had been listed and continued seven (7) times in the past due to the Debtor's contention that the feasibility problem could be resolved only upon the disposition of these Motions and the amicable dispositon of these Motions, though allegedly pending, had never been consummated. In order to break this cycle of non-resolution, we listed the instant Motions for disposition on October 30, 1986, and continued the hearing on the

1. Actually, given these figures, the net figure    should have been $9,350.00.

Trustee's Motion to Dismiss to December 9, 1986, indicating that no further continuances would be granted.

On October 30, 1986, Counsel for the Debtor and for the Mortgagee reported that they had nearly completed a Stipulation of Facts upon which the Motions could be decided. With reluctance, we continued the matter one more week, until November 7, 1986, with direction to the parties to either complete the Stipulation by that date or try the case on that date. On November 7, 1986, the parties presented the Stipulation of Facts which they agreed would constitute the entire record in the matters, and we issued an Order requiring the parties to file Briefs on or before November 17, 1986, and November 24, 1986, respectively, holding the December 9, 1986, date for, hopefully, the last continued hearing on the Trustee's Motion to Dismiss.

Although the Debtor filed her Brief in timely fashion, the Mortgagee did not file its Brief, due to a series of unanticipated and hence excusable events, until December 4, 1986. We were therefore unable to decide this matter prior to the continued hearing on the Trustee's Motion to Dismiss on December 9, 1986, and we were compelled to continue the Trustee's Motion once again, until February 3, 1987. In our Order accompanying this Opinion, we indicate that the Debtor must resolve the feasibility problem, in light of our rulings herein, or suffer dismissal of her case, on that date.

In the Stipulation, the parties agreed, in pertinent part, as follows:

1. The value of the residence owned by the Debtor and her non-Debtor husband was $21,000.00 at the time of filing,

2. The City's liens, in the total amount of $650.00, were senior to the Mortgagee's lien.

3. The Debtor had a valid recoupment claim in the amount of $1,000.00 against the Mortgagee. How this was to be "applied" to the Mortgagee's claim was, however, left "for the court to decide."

4. The Mortgagee sent certain letters attached to the Stipulation in purported compliance with the pertinent Veterans Administration (VA) Regulations and pertinent Pennsylvania mortgage foreclosure statute, Act 6 of 1974, 41 P.S. § 101, *et seq.*

5. Since filing the Petition, the Debtor had paid "not less than $3,335.96" to the Mortgagee.

The Debtor states, in her Brief, that the following three (3) questions, paraphrased as follows by us, are "at the heart of this dispute:"

1. What is the value of the interest of the Debtor's estate in the premises in issue? More specifically, should the value be reduced by at least one-half of the property's agreed value of $21,000.00 in the computation?

2. From what figure should the Debtor's recoupment claim be deducted?

3. Would the failure of the Mortgagee to comply with the applicable VA Regulations or the provisions of Act 6 justify denial of the Mortgagee's claim for attorneys' fees and costs?

Following several cases decided by our former Chief Judge, which we find persuasive, we answer the first question in the negative and decline the Debtor's invitation to reduce the value of the Debtor's interest in the premises, for purposes of an evaluation per 11 U.S.C. § 506(a), (d), to a figure below the total value of the realty, less the City's liens and the TILA penalty. Also, we ultimately decide to deny the Mortgagee's claim for attorneys fees and costs, but for reasons other than these suggested by the Debtor. The second question is answered by prior decisions of Judge Goldhaber indicating that we should deduct the recoupment offset from the claimed arrearages and the secured portion of the Mortgagee's total claim.

The first question is the most novel. As indicated above, it arises from an attempt to apply 11 U.S.C. § 506(a), (d), which provide as follows, to a situation where the debtor and moving party under these Code

provisions, is one co-owner of the entireties property:

506. Determination of secured status.

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest....

.    .    .    .    .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

■ We observe at the outset that the proper procedural device to challenge "the validity, priority, or extent of a lien or other interest in property," except a lien avoidance motion based upon 11 U.S.C. § 522(f), is an adversarial proceeding rather than a motion. Rules of Practice and Procedure in Bankruptcy 7001(2). *See In re Palombo Farms of Colorado, Inc,* 43 B.R. 709, 711 (Bankr.D.Colo.1984); and *In re Belco,* 38 B.R. 525, 528 (Bankr.W.D. Okla.1984). Here, the Debtor is obviously

seeking to determine the extent of the Mortgagee's lien, and hence that issue should have been litigated as an adversarial proceeding rather than by the filing of a motion. However, since this defect is purely procedural, and the Mortgagee has waived same by not only answering, but also stipulating to a record on which this issue may be decided on the motion, we shall not let this factor prevent us from reaching the merits here.

There is a threshold question as to whether 11 U.S.C. § 506(a) can be utilized, as the Debtor attempts, to reduce the amount of a secured claim arising from a residential mortgage. Two (2) local cases, using different reasonings, have declined to do so. The first line of reasoning, presented by Judge King of this Court in *In re Nefferdorf,* 26 B.R. 962, 965–66 (Bankr.E.D.Pa.1983), *aff'd,* 71 B.R. 217 (E.D.Pa.1984), was a contention that the previous version of 11 U.S.C. § 506(d)(1)[2] provided that 11 U.S.C. § 506(a) could be utilized to avoid liens only in those specific situations enumerated in 11 U.S.C. § 502(b), and that, in the absence of establishing one of the situations enumerated in § 502(b), the Debtor could not proceed under § 506(a). The second line of reasoning, set forth by Judge William H. Gindin, sitting in neighboring Trenton, New Jersey, invoked language in 11 U.S.C. § 1322(b)(2), which states that "a claim secured only by a security interest in real property that is the debtor's principal residence" cannot be "modified," to bar the application of § 506(a) in a residential mortgage setting. *See In re Smith,* 63 B.R. 15, 16 (Bankr.D. N.J.1986).

However, in a series of decisions, beginning with *In re Everett,* 48 B.R. 618 (Bankr.E.D.Pa.1985), former Chief Judge Emil F. Goldhaber of this court consistently rejected the lines of reasoning of each of

---

**2.** (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

(2) such claim was disallowed only under section 501(e) of this title.

the foregoing cases, and held that a residential mortgagor can indeed utilize 11 U.S.C. § 506(a) to bifurcate a mortgagee's lien into secured and unsecured portions. *See also, e.g., In re Panas,* 68 B.R. 421 (Bankr.E.D.Pa., 1986); and *In re Whitener,* 63 B.R. 701 (Bankr.E.D.Pa.1986).

■ We believe that Judge Goldhaber's decisions are correct, and we follow them here. Rather than limiting the situations in which a lien may be disallowed to only those situations set forth in § 502(b), as Judge King holds in *Nefferdorf,* we believe that the language of § 506(d)(1), as it existed at that time, was more logically read as simply requiring that a party in interest must *request* that a lien be avoided before such a lien avoidance could be effected. In any event, in 1984, § 506(d) was amended to delete the language of § 506(d)(1) emphasized by Judge King and make clear that a lien may be avoided in any appropriate situation, without reference to § 502(b), unless the secured party's claim was disallowed under only certain proscribed Code sections.

With respect to the *Smith* analysis, we believe that § 1322(b)(2), which provides as follows, applies only in the narrow set of circumstances where the *only* security taken is in the debtor's real property *and* where the debtor is seeking to *modify* the rights of a secured lender by means of the *plan:*

    (b) Subject to subsection (a) and (c) of this section, the plan may—

    •    •    •    •    •

    (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ...

We initially note that, here, the mortgage includes a security interest on "rents, issues, and profits thereof" in addition to certain appliances which otherwise might not have been considered fixtures in addition to the realty in issue. Hence, the Mortgagee's claim is *not* secured only by the Debtor's residence, and § 1322(b)(2) is for this reason inapplicable here.

Further, we question whether seeking to limit a mortgagee's security interest to the amount that represents the actual value of the mortgagor's interest actually effects a "modification" of the secured party's rights by means of the Debtor's *Plan.* A proceeding pursuant to 11 U.S.C. § 506(a) constitutes an attempt to obtain a declaration of what the mortgagee's security interest actually *is,* as opposed to an attempt to *change* the mortgagee's otherwise cognizable rights, as is addressed by 11 U.S.C. § 1322(b)(2). Further, the Debtor's Plan is not the medium through which she is seeking relief per § 506(a). In addressing the issue of interrelationship of § 1322(b)(2) and § 506(a), Collier states as follows:

since this section only applies to modification of the rights of holders of claims by the chapter 13 plan, it does not affect the determination of the allowed secured claim through the operation of section 506. Hence an undersecured claim secured only by a security interest in the debtor's principal residence may still be divided into an allowed secured claim and an allowed unsecured claim, with the lien declared void to the extent it secures a claim in excess of the allowed secured claim. 5 COLLIER ON BANKRUPTCY, ¶ 1322.06[1], at 1322–14 to 1322–15 (15th ed. 1986) (footnotes omitted).

Thus, we believe that neither line of reasoning declining to do so are as convincing as Judge Goldhaber's decisions which *do* allow debtors to utilize § 506(a) to contest the extent of residential mortgage liens.[3]

---

**3.** We note that Judge Gindin, in *Smith,* has considerable difficulty distinguishing not only Judge Goldhaber's *Everett* result, but also those of several cases in his own district. His attempt to distinguish *Everett* on the ground that the realty in issue was not the Debtor's residence fails both logically (why should a debtor receive less rights when his residence, as opposed to some other realty, is involved?) and in view of the decisions in *Panas, supra,* and *Whitener,*

■ However, the attempt by the Debtor here to cut the Mortgagee's claim in half because only one of two tenants by the entireties has filed a bankruptcy petition has failed, even when presented to Judge Goldhaber as it was in his recent decision in *Panas*. We shall follow Judge Goldhaber's reasoning in *Panas*, as we do in following his reasoning in *Everett*.

As in *Panas*, the Debtor cites, in support of her theory that the Mortgagee's claim should be bifurcated, several cases where, in the contexts of significantly distinct Code sections and factual settings, courts have held that the interest of the estate of a co-tenant by the entirety is measured at less than the full value of the realty owned by the entireties. *In re Dionne*, 40 B.R. 137 (Bankr.D.R.I.1984); *In re Odegaard*, 31 B.R. 718 (Bankr.D.Ore.1983) (interest valued at zero); *In re Ignasiak*, 22 B.R. 828 (Bankr.E.D.Mich.1982); *In re Hockstein*, 7 B.R. 261 (Bankr.E.D.Pa.1980) (per GOLDHABER, CH. J.); and *In re Jordan*, 5 B.R. 59 (Bankr.D.N.J.1980). However, all of these cases except *Hockstein* involved evaluations of the debtors' equity in attempts by the respective debtors, pursuant to 11 U.S.C. § 522(f)(1), to avoid judicial liens created by judgments against the debtor-spouse only. *Hockstein* involved an evaluation of the debtors' equity in a case involving a motion for relief from the automatic stay, and, although Judge Goldhaber queries whether the Debtor's equity should be evaluated at the figure of one-half of the property's value, he ultimately holds that the entire value of the property should be used due to the nature of "the Pennsylvania law on tenants by the entirety." 7 B.R. at 263. In *Panas, supra*, at 425, Judge Goldhaber clarifies any ambiguities about his holding in *Hockstein* that the *entire* value of the property was utilized there and holds that the entire value should be utilized in the precise factual matrix as that presented in the instant case.

Moreover, as Judge Goldhaber points out in *Panas*, at 422–24, in the context of each of these cases, had they prevailed in evaluating the properties at issue at their full value, the respective creditors would have succeeded in expanding the rights that they would have had under state law in the bankruptcy context by encumbering property interests of greater value than they otherwise could have encumbered under state law. The courts, particularly in *Dionne*, 40 B.R. at 139, and *Jordan*, 5 B.R. at 62, properly observe the lack of equity in the creditors' respective positions, and the results reached in those cases are hence largely attributable to such practical and equitable consequences. Judge Goldhaber further points out that the equities are far different in a situation where, as here and in *Panas*, the Debtor and the non-Debtor spouse are both judgment debtors or joint obligees as to the creditor, the value of whose lien the Debtor is attempting to diminish. *Panas, supra*, at 424–25.

The equities against the Debtor are particularly heightened when the joint judgment debtor or joint-obligee is the spouse of the debtor who owns the property with the debtor *by the entireties*. In addition to utilizing the device of having one of two marital partners file bankruptcy to obtain advantages under the exemption laws, such a filing will divest the creditor of the right to execute upon the entireties' property after the conclusion of the bankruptcy, because the discharge of the filing spouse will eliminate the requisite potential of an enforceable right against both marital partners. *See Napotnik v. Equibank and Porkvale Savings Ass'n.*, 679 F.2d 316, 319 (3d Cir.1982); and *In re Riley*, 48 B.R. 194, 196 (Bankr.E.D.Pa.1985) (per KING, J.).

Here, unlike the situation in *Dionne, Odegaard, Ignasiak*, and *Jordan*, the creditor's interest would *not* be enhanced by evaluating the premises at its full value. The creditor is merely getting, in the bankruptcy context, exactly what he bargained for when he entered into a secured transaction with both marital partners. Given the advantages which already will flow to both marital parties with regard to joint property ownership and joint obligations when

*supra,* where *Everett* is applied to situations
which unquestionably involve *residential* realty.

only one of the partners files bankruptcy, we are unable to perceive the equity of allowing further benefits to flow to the marital partners by this device.[4]

As Judge Goldhaber points out in *Panas,* at 424, the Code provides no specific guidance as to how we are to determine the value of the creditor's secured interest in the debtor's estate for purposes of 11 U.S.C. § 506(a). *See also,* 3 COLLIER, *supra,* ¶ 506.04, at 506–24. In light of this, we believe that we must make an evaluation of the practical consequences of our decision, assuming the impact of both state law and bankruptcy law, and determining therefrom the equities presented by the factual situations at hand. In so doing, we join Judge Goldhaber in holding that, where one tenant by the entireties seeks to utilize § 506(a) to the value of his or her property interest, we shall not reduce the value by one-half, or by any other portion, but rather shall utilize the full value of the property.[5]

The second and third questions raised by the Debtor are not quite so provocative.

■ The issue of whether any of the Mortgagee's claims for attorney's fees and costs are allowable is addressed in the Code by 11 U.S.C. § 506(b), which provides as follows:

> (b) To the extent that an allowed secured claim is secured by property the

value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, *and any reasonable fees, costs, or charges provided for under the agreement under which such claims arose.* (emphasis added).

In *In re Johnson-Allen,* 67 B.R. 968, 975–77 (Bankr.E.D.Pa.1986), we discussed to some degree our view of the interplay among § 506(b), the terms of the parties' underlying contractual agreement, and applicable state law. We indicated there, and reaffirm here, that we believe that a secured party can successfully claim such fees and costs only if it meets the initial burden of establishing that such claims are strictly within the scope of claims allowable under § 506(b). The agreement, as the Mortgagee, in drafting it, undoubtedly so intended, must further be interpreted in light of any applicable state law.

In the instant factual setting, our ultimate ruling that the valid secured claim of the Mortgagee is $19,350.00, juxtaposed with the parties' Stipulation that the value of the property (which we hold cannot be bifurcated for purposes of a § 506(a) determination) is $21,000.00, a figure greater than the amount of the allowed Secured Claim, renders it *possible* that, under

---

**4.** Also somewhat disturbing to us is the potential scenario of allowing the serial filing by both spouses to reduce a secured party's rights below those that the secured party would have in the case of a joint filing. If we accept the Debtor's invitation to evaluate the interest of the Debtor here at one-half of the full value of the premises, while holding that both marital partners are liable for the entire mortgage, we could unfairly diminish the rights of the secured creditor, per the following example. Assume that marital partners own a home by the entireties, worth $20,000.00, and on which they owe $15,000.00 on a mortgage. If these parties filed jointly, they could not avoid any portion of the secured debt on the basis of 11 U.S.C. § 506(a). However, if one filed first, and if we evaluated that party's interest at one-half the value of the property, we would be compelled to rule, on the basis of § 506(a), that $5,000.00 of the debt was unsecured. If the other spouse followed with a filing, the same result would occur and the

mortgagee's security would thus be reduced by $5,000.00. This is clearly not a just result.

**5.** We do note, however, that different consequences may ensue when equities exist otherwise in other circumstances, such as the following: (1) When the co-owners of property are joint tenants or tenants in common, as opposed to tenants by the entireties, due to the ability of creditors to reach the interest of just one of the tenants in those situations, unlike the situation of a tenant by the entireties. *See Whitener, supra;* (2) Where a lien avoidance motion pursuant to 11 U.S.C. § 522(f)(1) is at issue, as opposed to an attempt to determine the value of a secured claim, per § 506(a). Therefore, our ruling here does not necessarily represent an endorsement of the result in *In re Hackett,* 13 B.R. 755 (Bankr.E.D.Pa.1981), *reconsideration denied,* 23 B.R. 710 (Bankr.E.D.Pa.1982) (per KING, J.).

§ 506(b), the Mortgagee, being oversecured, could be allowed "reasonable" fees and costs as provided for under the parties' agreement, interpreted in light of applicable state law.

■ However, we believe that, to succeed in a claim under § 506(b), the Mortgagee also has the burden of establishing that such fees and costs are (1) provided for under the parties' contractual agreement; (2) reasonable; and (3) allowable under applicable state law.

Starting with analysis of the underlying contractual agreement(s), we find only the following clauses relevant to collection of costs and fees in, respectively, the Mortgage and Mortgage Note attached as exhibits to the parties' Stipulation:

In the Mortgage:

13. If, at any time, a Writ of Execution (Money Judgment) or other execution is properly issued upon a judgment obtained upon said Note, or if an Action of Mortgage Foreclosure or any other appropriate action or proceeding to foreclose a mortgage is instituted upon or under this Mortgage, an attorney's commission of FIVE per centum (5%) of said principal debt shall be payable, and recovered in addition to all principal and interest and all other recoverable sums then due, together with costs of suit.

In the Mortgage Note:

The Maker does hereby empower any attorney of any court of record within the United States or elsewhere to appear for Maker, with or without a declaration filed, and confess judgment or judgements against said Maker in favor of the Payee or any subsequent holder hereof, as of any term, for the entire unpaid principal of this Note, and all other sums paid by the holder hereof to or on behalf of the Maker pursuant to the terms of this Note or said Mortgage, and all arrearages of interest thereon, together with costs of suit, attorney's commission

of 5% for collection, and a release of all errors, on which judgment execution or executions may issue forthwith. The Maker hereby waives the right of inquisition on all property levied upon to collect the indebtedness evidenced hereby and does voluntarily condemn the same and authorizes the Prothonotary to enter such condemnation, and waives and releases all laws, now in force or hereafter enacted, relating to exemption, appraisement or stay of execution.

■ It is clear to us that neither of these clauses entitled the Mortgagee to fees and costs here. The institution of a mortgage foreclosure or other appropriate action is necessary to trigger the invocation of the clause in the Mortgage, and the entry of a confessed judgment would be necessary to trigger the applicability of the clause in the Mortgage Note.[6] There is no indication that any foreclosure or any other appropriate legal action of any kind was ever instituted by the Mortgagee against the Debtor in this record. Since these clauses were obviously drafted by the Mortgagee, and hence must be construed strictly against it, *see In re United Nesco Container Corp.,* 68 B.R. 970, 973 (Bankr.E.D.Pa., 1987), it can readily be concluded that the fees and costs sought here are not "provided for" under the applicable agreements here.

Therefore, without further analysis, we can readily conclude that the Mortgagee's claims for attorney's fees and costs are not sanctioned by § 506(b). We should add that the Mortgagee has made no showing whatsoever that any of these charges were "reasonable." Further, we note that the most obviously applicable Pennsylvania law, 41 P.S. § 406, as consistently construed by this Court, sets forth a legislative intent to restrict the rights of mortgagees to collect such fees and costs. *See In re Schwartz,* 68 B.R. 376, 378, 381–83 (Bankr.E.D.Pa.1986) (per FOX, J.); *In re Cervantes,* 67 B.R. 816, 820–21 (Bankr.E.D.

---

6. In light of 41 U.S.C. § 407(a), it is doubtful whether, under state law, the Mortgagee would ever seek to have a judgment by confession entered in a residential mortgage foreclosure.

Moreover, the constitutionality of so proceeding is suspect. *See Swarb v. Lennox,* 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972).

Pa.1986) (per GOLDHABER, CH. J.); and *In re Small,* 65 B.R. 686, 692–93 (Bankr.E.D.Pa.1986) (per SCHOLL, J.).[7]

Finally, the parties request that this Court determine how the Debtor's agreed entitlement to a $1,000.00 TILA recoupment penalty should be deducted from the Mortgagee's claims. Before doing so, it is important to assess where our rulings on the other questions presented by this case have left us. We have ruled that the Debtor is not entitled to have her entireties' interest valued at one-half of the agreed value of the premises of $21,000.00. We do note that the seniority of the City liens totalling $650.00 reduces our calculation of the Mortgagee's secured claim to $20,350.00. However, except for consideration of whether it ought to be reduced by the TILA claim, we shall not reduce the secured claim figure further, and we therefore rule that, not considering the $1,000.00 TILA recoupment, the Mortgagee has a valid secured claim of $20,350.00. In light of our ruling on the Mortgagee's Claim for costs and fees, the Mortgagee's total Claim is reduced by $1,000.00 plus $1,450.80 from $24,273.54, or to $21,822.74.

This is a figure considerably larger than the figure for arrearages, which we also hold, pending allocation of the TILA recoupment Claim, is limited to $7,888.53 ($9,339.33 less the $1,450.80 Claim for costs and fees). It is clear, under these circumstances, that the arrearages will not exceed the total secured claim of the Mortgagee against the Debtor. Hence, all payments on arrearages will undoubtedly be utilized by the Debtor, in her Plan, to satisfy the secured portion of the Mortgagee's claim. The Debtor's attempt to reduce the secured claim to a figure less than the arrearages has failed, and we therefore assume that, if she is to present a feasible Plan, the Debtor or will most likely propose to pay the arrearages only, and to allocate all payments on arrearages to the secured portion of the Mortgagee's claim.

■ In other cases involving residential mortgages, where this Court, and particularly Judge Goldhaber, has ruled that a TILA recoupment penalty against a residential mortgagee is in order, he has deducted this sum from the mortgagee's Proof of Claim for arrearages. *See In re Schultz,* 58 B.R. 945, 946–47, 949 (Bankr.E.D.Pa.1986). Consistently with the holding of *Schultz,* we must reject the Mortgagee's invitation to deduct the $1,000.00 recoupment from only the unsecured portion of the $20,350.00 "total debt" owed to the Mortgagee. We should note that this result is consistent with the equitable principle set forth in *Griggs v. Provident Consumer Discount Co.,* 680 F.2d 927, 932–33 (3d Cir.1982), that the TILA penalty, modest as it is, should be imposed in such a manner as to have the most meaningful impact on the wrongdoing creditor.

Thus, we will reduce the Mortgagee's "claim" for arrearages to $6,888.53 and the secured portion of its total debt to $19,350.00. An Order consistent with the foregoing and our desire to keep this matter moving forward in the spirit of our previous Orders shall be entered.

### ORDER

AND NOW, this 19th day of February, 1987, upon consideration of the parties' Stipulation of Facts, which constituted the record for disposition of the Debtor's Motion Objecting to the Proof of Claim of Central Mortgage Company (hereinafter "the Objection") and Motion to Determine

---

**7.** It is therefore not necessary for us to reach the issue raised by the Debtor, i.e., that *any* violation of the applicable Pennsylvania law, 41 P.S. § 403, no matter how hyper-technical, precludes any award of costs or fees. We are, however, inclined to conclude, with the court in *Werts,* that very technical violations of 41 P.S. § 403 should not, in themselves, eliminate any claim for charges which are in fact shown to be both authorized by the agreement and reasonable. Of course, as per *Schwartz* and *Cervantes,* 41 P.S. § 406(3) limits the amount of attorney's fees collectible prior to commencement of a foreclosure action to $50.00. Since no action to foreclose was apparently commenced here, at least per the record we have before us, it would seem that the Mortgagee's attorney's fee claim would be limited to no more than $50.00 in any event.

Value of Security Interest and to Avoid Lien of Central Mortgage Company (hereinafter "the § 506 Motion"); the Briefs of Counsel in support of their respective positions; and the Debtor's Motion to Reconsider our previous Opinion and Order of January 9, 1987, which is SUSTAINED in part, it is hereby ORDERED AND DECREED, consistent with the foregoing Opinion, as amended, as follows:

1. The Objection is SUSTAINED in part, and the Mortgagee, now known as MERITOR MORTGAGE CORPORATION EAST, is determined to have a valid Proof of Claim in the "Restatement Amount" (arrearages) of $6,888.53 and "Total Debt" (Claim) of $21,822.74.

2. The § 506 Motion is SUSTAINED in part, and the Mortgagee is determined to have a secured claim in the amount of $19,350.00 against the estate of the Debtor's interest in her residential realty situate at 2221 Taggart Street, Philadelphia, Pennsylvania 19125, and an unsecured claim in the amount of $2,472.74. Any lien of the Mortgagee on the said realty in excess of $19,350.00 is AVOIDED.

3. The Mortgagee and the Debtor are accorded until March 10, 1987, to file any Amended Proof of Claim on behalf of the Mortgagee consistent with the within Opinion, and the Debtor is accorded until March 10, 1987, to file any Amended Plan consistent with the within Opinion and to serve same as required by Local Rule 3019.1. Both parties are also directed to serve copies of any such filing upon the Trustee and on the Court, in Chambers, at the following address:

Honorable David A. Scholl
3722 United States Court House
601 Market Street
Philadelphia, PA 19106–1763

4. The Debtor's Counsel is accorded an opportunity to file a Motion requesting attorney's fees and costs, per 15 U.S.C. § 1640(a)(3), in light of the Debtor's entitlement to a TILA recoupment penalty, on or before March 10, 1987, said Motion to be procedurally in conformity with *In re*

*Meade Land and Development Co., Inc.,* 527 F.2d 280 (3d Cir.1975).

5. The Trustee's Motion to Dismiss the Debtor's case *remains* scheduled on

WEDNESDAY, MARCH 18, 1987, at 10:00 A.M. in Court Room No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

6. *No further continuances in the scheduling of this matter will be granted.*