**In re Patricia SMITH, Debtor.**

**Patricia SMITH, Plaintiff,**

v.

**The KISSELL COMPANY, Defendant.**

**Bankruptcy No. 87–03859S.**
**Adv. No. 88–0965S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 28, 1988.

As Amended Nov. 1, 1988.

---

Irwin Trauss, Community Legal Services, Inc., Philadelphia, Pa., for debtor/plaintiff.

Jonah D. Levin, Norristown, Pa., for defendant.

Edward Sparkman, Philadelphia, Pa.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION AND PROCEDURAL HISTORY

The instant adversary proceeding involves an Objection filed by PATRICIA SMITH, the Debtor-mortgagor (hereinafter referred to as "the Debtor"), to a Proof of Claim filed by the Defendant, her mortgagee, THE KISSELL COMPANY (hereinafter "the Mortgagee"). We follow our own recent previous decisions in disallowing that portion of the claim seeking post-judgment interest at the contract rate and permitting the Debtor to recoup a penalty for violations of the federal Truth–in–Lending Act, 15 U.S.C. § 1601, et seq. (hereinafter "the TILA"), in the loan documents. Absence of precision on the part of the Mortgagee and apparent duplication of amounts already included in its judgment in itemizing its costs cause us to reduce the amount sought by the Mortgagee for such matters from $1,525.00 to $623.50. We therefore allow the Mortgagee's Proof of Claim in the amount of $21,394.28, less whatever post-petition payments were made by the Debtor to the Mortgagee as of the Confirmation date.

The Chapter 13 case underlying this controversy was filed on July 31, 1987. Because of a delay by the Debtor in filing her requisite Chapter 13 Statement and Plan, the scheduling of the meeting of creditors pursuant to 11 U.S.C. § 341 in this case was delayed until June 1, 1988. Shortly thereafter, on June 16, 1988, the Mortgag-

ee filed a motion seeking relief from the automatic stay in order to continue to pursue a state-court foreclosure proceeding against the Debtor, pursuant to 11 U.S.C. § 362(a). A hearing was conducted on this motion on July 14, 1988. During the course of this hearing, the Debtor expressed an intention to file an adversary proceeding challenging certain aspects of the Mortgagee's claim, and advised us that it was her intention to liquidate the entire mortgage balance by means of her Plan, rather than seeking to cure arrearages in her mortgage payments in the Plan.

At the close of the hearing, we indicated our intention to enter the Order which we ultimately did enter on July 15, 1988. Stating that no more delays could be tolerated, we directed the Debtor to make payments of at least $425.00 monthly to the Mortgagee as of August, 1988, as well as payments to the Trustee, and file the projected adversary proceeding on or before July 20, 1988. We also scheduled the trial on the adversary proceeding and the Confirmation hearing on September 8, 1988.

In response thereto, this proceeding was filed, albeit two days late, on July 22, 1988. It did, however, come to trial on August 25, 1988. The only witness was the Debtor, and her principal undertaking on the stand was identifying a series of documents admitted into the record. At the close of the hearing, we established a briefing schedule projecting completion of briefing by October 17, 1988, and a continuance of the Confirmation hearing for the last time, on November 10, 1988. Delays in submissions of all of the briefs occurred, which was particularly disappointing in light of the fact that no aspect of this proceeding

sought to break new ground. We are nevertheless drafting and filing this Opinion rapidly, in order to allow the parties to prepare themselves for the November 10, 1988, Confirmation hearing, which we specifically stated we would be unwilling to continue further.

Since the facts are largely undisputed, we believe that we can properly prepare our Opinion in narrative form.

B. THE MORTGAGEE SHALL BE ALLOWED INTEREST AT ONLY THE LEGAL RATE ON ITS FORECLOSURE JUDGMENT

The parties agree that, on May 21, 1987, the Mortgagee entered a judgment in mortgage foreclosure against the Debtor in state court in the amount of $21,523.08. However, they disagree as to how this fact is properly applied in computing the Mortgagee's Proof of Claim. The Debtor, citing to our recent decision in *In re Herbert,* 86 B.R. 433, 436–38 (Bankr.E.D.Pa.1988), contends that we can add only interest at six (6%) percent to this figure between May 21, 1987, and July 31, 1987, which yields a result of $247.70 additional interest.[1] *Accord, In re Roach,* 824 F.2d 1370, 1377 (3d Cir.1987) (applying New Jersey law); *In re Cole,* 89 B.R. 433, 439 (Bankr.E.D.Pa.1988); and *In re Coleman,* 82 B.R. 15, 17 (Bankr. D.N.J.1988) (applying New Jersey law). The Mortgagee, without citing *Herbert* despite the Debtor's reference to *Herbert* and its obvious pertinence, apparently contends that it should be able to keep accruing the contract rate of fourteen (14%) percent through the date of the bankruptcy filing and perhaps through the date that the mortgage balance is liquidated.[2]

1. Our calculations were to multiply the daily rate of six (6%) percent annual interest of .01644 percent times 70 days times the $21,-513.08. The Debtor arrived at the lower figure of $141.52 because she miscalculated the period between the judgment and the filing as 40 days rather than 70 days.

2. Actually, the Mortgagee, in its Proof of Claim, calculates the relevant Total Debt of its Claim as follows, without any reference to the judgment:

| | |
|---|---|
| Principal Balance as of 8/1/86 | $18,327.04 |
| Interest $ 14% from 9/1/86 to 7/31/87 | 2,373.36 |
| Late Charges of $10.63/month | $ 126.30 |
| Fees and Costs [see page 11 *infra*] | 1,525.00 |
| Escrow Deficit | 1,086.55 |
| TOTAL: as of 7/31/87 | $22,913.25 |

The Mortgagee never makes an effort to further explain how the above figures were calculated, or to translate its position regarding the role of the judgment in the calculation process asserted in its Brief to these figures. It simply contends, without explanation in its Brief, that $22,913.25 is the correct figure for its Proof of Claim.

We reaffirm our holding in *Herbert*, underscoring the argument made there, in response to the Mortgagee's contention that 41 P.S. § 404 does or should alter the common law of Pennsylvania, that a mortgage is merged in a foreclosure judgment. 86 B.R. at 436-37. *Cf. Cole, supra*, 89 B.R. at 436 (setting aside a sheriff's sale has no impact on foreclosure judgment). A more thoughtful consideration of the issues addressed in *Herbert* than is presented by the Mortgagee are raised in an article which recently appeared in THE LEGAL INTELLIGENCER, H. Ominsky, *Does Postjustment Interest Have Life After Death*, LEGAL INTELL., Pg. 21, col. 1 (Aug. 22, 1988). In light of the points made therein, we note some additional refinements and explanations of our Opinion in *Herbert*.

The *Herbert* holding and our decision here are rendered in the context of a bankruptcy proceeding in which the Debtor's plan was to liquidate the mortgage balance in full, as opposed to effecting a cure of arrearages. In *Herbert*, the Debtor had effected a post-petition sale of her premises, and the only dispute was over how much of the proceeds were payable to the mortgagee as its legitimate proof of claim. Clearly, that case presented a situation where the debtor-mortgagor contemplated an immediate full pay-off of her mortgage balance.

■ Here, the Debtor similarly intends to pay off her mortgage balance in full through her bankruptcy Plan. Therefore, as in *Herbert*, a full pay-off of the mortgage balance is contemplated. However, the full pay-off is deferred until the Plan is completed. When a debtor seeks to defer payment of an obligation which will be liquidated in a Chapter 13 plan, interest may be demanded by the obligee over the period of such a deferral. *See In re Jordan*, 91 B.R. 673, 677-678 (Bankr.E.D.Pa. 1988); *In re Mitchell*, 75 B.R. 593, 598-99 (Bankr.E.D.Pa.1987); and *In re Crompton*, 73 B.R. 800, 806-07 (Bankr.E.D.Pa.1987). The rate at which interest is allowed for such a deferral is the *lower* of the contract rate or the "market rate" of interest. *In*

*re Mitchell*, 77 B.R. 524, 529 (Bankr.E.D. Pa.1987). It is not necessarily the contract rate.

Our means of calculating interest which a debtor must pay in a Plan that seeks to merely cure arrearages on a mortgage by means of a Chapter 13 Plan, and the mortgagee's "proof of claim" represents arrearages only, would undoubtedly be different. *See In re Small*, 65 B.R. 686, 689-91 (Bankr.E.D.Pa.1986), *aff'd*, 76 B.R. 390 (E.D.Pa.1987). ("claim" for arrearages is not the equivalent of a "claim," for purposes of § 506(b)). There, the debtor is seeking to cure delinquent mortgage payments which have the contract rate of interest built into them.

The *Herbert* holding follows, at least in part, from the principle of bankruptcy law that collection of post-petition interest by a creditor in bankruptcy is generally impermissible, because it provides particular creditors with a disproportionate share of the debtor's assets. *See Herbert*, 86 B.R. at 438 n. 3; and *In re Shaffer Furniture Co.*, 68 B.R. 827, 830 (Bankr.E.D.Pa.1987). The principles set forth in *Herbert* therefore may not be applicable out of the context where a debtor in a Chapter 13 bankruptcy seeks to pay off a mortgage balance in full under a Plan.

We note that the article mentioned above cites only one Pennsylvania case, a Common Pleas Court decision, as a source of reasoning at variance from that in *Herbert*, *Sicari v. Barua*, 43 Pa.D. & C.3d 647 (Somerset Co. C.P.1986). That decision, moreover, holds that the legal rates should be applied to calculate interest on a judgment unless the parties expressly agree to the contrary. *See also Dunbar v. Dunbar*, 9 Pa.D. & C.3d 214, 218 (Allegheny Co.C.P. 1977). The decision in *Sicari*, even given its facts, seems strongly influenced by the court's critique of the purportedly low rate of legal interest in Pennsylvania.

However, the six (6%) percent legal rage of interest was re-enacted by the Pennsylvania legislature, as recently as 1974, 41 P.S. § 202, and therefore is hardly attributable to archaic legislation. Moreover, the "fairness" of this rate would not appear to

us to be a factor that courts can second-guess in deciding cases before us. The Mortgagee here may have the *Sicari* decision in mind when it argues that it is significant that the parties' mortgage in issue provides that the interest rate recited therein must apply until it is "fully paid." However, clearly, this is *not* an express provision that the contract interest rate remains payable *after judgment.* Furthermore, it must be recalled that the reasoning of *Herbert* is based upon the principle that the mortgage *merges* with the judgment upon entry of a foreclosure judgment, a principle reaffirmed by, *inter alia,* the Court of Appeals, in *Roach, supra.* When such merger occurs, the provisions of the mortgage are no longer relevant.

We do not consider the *Herbert* holding harsh upon mortgagees who are creditors in bankruptcy cases where the debtor seeks to pay off the mortgage in full in the bankruptcy plan. The mortgagee will be deprived of interest only between the time of judgment and confirmation of a plan. It will receive, instead, interest at the legal rate until the date of filing, and, unless the contract rate is lower, the market rate of interest after confirmation.[3] The Mortgagee is partially responsible for allowing this case to languish between filing and confirmation. This court reacted swiftly to minimize this lapse once it was discovered.

Our agreement with the Debtor that the Mortgagee is allowed interest at only the legal rate between May 21, 1987, and July 31, 1987, results in our allowing the base of the Mortgagee's proof of claim at the amount of the judgment of $21,523.08, plus $247.70 interest, or a total of $21,770.78.

## C. THE DEBTOR IS PERMITTED TO RECOUP A $1,000.00 TILA PENALTY AGAINST THE MORTGAGEE'S PROOF OF CLAIM

In its Brief, the Mortgagee concedes that, in preparing the TILA disclosure statement in connection with the mortgage settlement on May 3, 1984, it erroneously added the $644.40 sum charged to the Debtor for a mortgage insurance premium in the transaction into its calculations twice, once as a prepaid finance charge and the second time as a finance charge to be paid over the duration of the loan. As a result, the fundamental TILA disclosures of the Finance Charge, Total of Payments, and Annual Percentage Rate are all, to some degree, erroneously skewed. Faced with the dismal prospect of attempting to somehow avoid a $1,000.00 recoupment penalty in light of these concessions, the Mortgagee assembles a futile array of makeweight arguments.

First, it contends that, since a TILA cannot be asserted as a counterclaim in a mortgage foreclosure action under current Pennsylvania law, the Debtor's recoupment claim should not be cognizable here, citing *Fleet Real Estate Funding v. Smith,* 366 Pa.Super. 116, 125–27, 530 A.2d 919, 924–25 (1987); and *New York Guardian Mortgage Co. v. Dietzel,* 362 Pa.Super. 426, 431, 524 A.2d 951, 953 (1987), as its support. However, in two decisions of our own, *In re Parker,* 80 B.R. 729, 732 (Bankr.E.D.Pa. 1987); and *In re Dangler,* 75 B.R. 931, 935–37 (Bankr.E.D.Pa.1987), we totally rejected the application of the reasoning of

---

**3.** We note that the Mortgagee here has filed an Objection to confirmation of the Debtor's current plan based, *inter alia,* upon her failure to provide for the payment of interest necessary to defer payment to the Mortgagee, pursuant to 11 U.S.C. § 1325(a)(5)(B).

The Debtor's Plan is based upon the now fallacious assumption that the secured portion of the Mortgagee's claim will be not greater than $16,000.00. In fact, since the Debtor abandoned the challenge of the Mortgagee's claim under 11 U.S.C. §§ 506(a), (d) originally contemplated by this Complaint, it appears that the amount to be deferred may approach $20,000.00. If the sum of $20,000.00 is deferred over 45 months, the

approximate maximum remaining length of the Plan, and deferral interest rate of ten (10%) percent is assumed, we calculate that payments approaching $650.00 monthly will be required for the duration of the Plan to render it feasible. The Debtor is only paying $425.00 monthly at present. She may be unable to absorb such additional payments.

We certainly urge the Debtor to contemplate these prospects immediately. We do not intend to continue the November 10, 1988, Confirmation hearing. The Debtor's difficulties are of course attributable in significant part to her *own* delays during the early states of this case.

those cases to litigation of objections to proofs of claims filed by mortgagees in bankruptcy cases. We continue to believe that the *Smith* and *Dietzel* decisions are totally misguided pronouncements on their own terms and reiterate that, in any event, they are in no sense binding or even applicable to proof of claim litigation in this court. As we explained in *Dangler*, the filing of a proof of claim cannot be characterized as anything but "an action to collect on a debt," pursuant to 15 U.S.C. § 1640(e), irrespective of the fact that *Smith* and *Dietzel*, we believe erroneously, characterize a mortgage foreclosure proceeding as an "in rem proceeding" which is not "an action to collect on a debt."

■ The express language of 15 U.S.C. § 1640(e), as well as a veritable mass of cases from this court, rebut the notion that the one-year statute of limitations applicable to affirmative actions to recover for TILA damages are applicable to attempts to assert recoupment defenses against proofs of claims filed by creditors in a bankruptcy proceeding. *See, e.g., Werts v. Federal National Mortgage Ass'n,* 48 B.R. 980, 983–84 (E.D.Pa.1985); *In re Johnson–Allen,* 67 B.R. 968, 972 (Bankr.E.D.Pa. 1986); and *In re Hanna,* 31 B.R. 424 (Bankr.E.D.Pa.1983).

■ The Mortgagee's claim that 15 U.S.C. § 1640(c), excusing a creditor from liability if a TILA violation occurs by means of "a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," is pertinent here is likewise plainly misguided. The Mortgagee has produced *no* evidence tending to meet the requisite "preponderance of evidence" standard that it maintained *any* procedures adapted to avoid errors. This failure is fatal to a § 1640(c) defense. *See Thomka v. A.Z. Chevrolet, Inc.,* 619 F.2d 246, 250–51 (3d Cir.1980). A legislative scheme contemplating statutory penalties, like the TILA, does not admit of a "technical violation" exception. *See Gennuso v. Commercial Bank & Trust Co.,* 566 F.2d 437, 440–41 (3d Cir.1977); and *In re Russell,* 72 B.R. 855, 861–62 (Bankr.E.D. Pa.1987). Finally, the less serious violation of simply failing to include the mortgage insurance premium in the finance charge has itself been held to give rise to a TILA recoupment penalty. *See In re Lindsey,* Bankr. No. 87–03429S (Bankr.E.D.Pa. May 24, 1988) [available on WESTLAW, 1988 WL 54654] and *In re Schultz,* 58 B.R. 945, 948–49 (Bankr.E.D.Pa.1986).

The Debtor is therefore clearly entitled to a $1,000.00 recoupment against the Mortgagee's proof of claim in light of its violations of the TILA in providing a disclosure statement of the mortgage loan transaction in issue to the Debtor.

## D. THE MORTGAGEE IS ENTITLED TO CERTAIN OF THE COSTS REQUESTED, WHICH WE REDUCE TO $623.50

At trial, neither party presented any evidence concerning the legitimacy or lack of legitimacy of any of the fees and costs sought by the Mortgagee in its Proof of Claim, which are enumerated therein as follows:

| | |
|---|---:|
| Filing and Service | $ 223.50 |
| Title Report | 156.00 |
| Sheriff's Sale | 600.00 |
| Notaries | 20.50 |
| Legal Fee | 525.00 |
| Fees and Costs | $1,525.00 |

Nor does either party address these items at length in their respective Briefs. The Debtor cites to *Herbert,* 86 B.R. at 438, wherein it is noted that we *allowed* costs of $1,224.15 because the Debtor did not contest the legitimacy of same; and *In re Jablonski,* 70 B.R. 381, 382, 388–89 (Bankr. E.D.Pa.1987), *aff'd and remanded,* 88 B.R. 652 (E.D.Pa.1988), in which we disallowed a request for *pre-judgment* fees of $1,450.80 because the Mortgagee made no showing that the sums requested were reasonable. The Mortgagee merely quotes from Pennsylvania Rule of Civil Procedure 1526, which states that costs follow a judgment as of course.

■ Neither approach seems adequate to us. Legitimate costs do, of course, follow judgments, and we have refused to strike mortgagees' requests for amounts which

have been awarded to them in judgments. *See In re Miller, Commercial Banking Corp. v. Miller,* 90 B.R. 762, 770 (Bankr.E. D.Pa.1988); *In re Mosley,* 85 B.R. 942, 951 n. 7 (Bankr. E.D.Pa.1988); and *In re Jablonski,* 70 B.R. 381, 15 B.C.D. 604, 608–09 (Bankr.E.D.Pa.1987).[4] *Accord, Werts, supra,* 48 B.R. at 985. In mostly affirming our final *Jablonski* opinion, after we realized that no foreclosure judgment had ever been entered against the debtor, the district court opines that, if evidence of costs is presented, the requested costs should be allowed. 88 B.R. at 658.

It therefore appears to us that certain costs must indeed follow state-court judgments. However, it does not follow, as the Mortgagee suggests, that every item which it claims as a cost in connection with the state-court proceeding must be allowed. Also under the American rule, legal fees do not follow a judgment as of course. *See In re Nickleberry,* 76 B.R. 413, 425 (Bankr.E. D.Pa.1987).

In rendering our decision on this issue, we note initially that the Assessment of Damages in the state-court foreclosure case is part of the record in this case. The Assessment includes, in the calculation of the state-court judgment of $21,523.08 on May 21, 1987, $900.00 for an "Attorney's Fee," and the $156.00 recited for "Title Report." The "Title Report" fee therefore appears to have already been included in the calculation of the judgment. A $900.00 figure for an attorney's fee is also included in the calculation of the judgment. This figure is, we believe, quite liberal, *see Nickleberry, supra,* 76 B.R. at 420–23, and therefore we see no need to add to the Mortgagee's "Legal Fee" by $525.00, or by any amount whatever. We can agree that a "Filing and Service" charge of $223.50 should be allowable. We agree that $600.00 is the amount which must be deposited for the scheduling of a Sheriff's Sale. However, we also strongly suspect that some refund of this deposit must have been received by the Mortgagee. In the absence of evidence as to how much, we shall cut

this figure to $400.00. Without explanation of to what it pertains, we shall disallow the $20.50 claimed for "Notaries." The result is that we shall allow the Mortgagee net costs of $623.50.

**E. CONCLUSION**

As a result of the foregoing, we set the Mortgagee's Proof of Claim at the following figure:

| | | |
|---|---|---|
| Judgment | | $21,523.08 |
| Post–Judgment Interest | (+) | 247.70 |
| TILA Recoupment | (−) | 1,000.00 |
| Allowable Costs | (+) | 623.50 |
| **NET CLAIM** | | **$21,394.28** |

Both parties agree that the Debtor's post-petition payments should be deducted from this sum. We have no means of measuring this figure, and therefore must simply direct that this sum, whatever it is, be deducted to reach the net claim figure.

Our Order makes specific reference to the right of the Debtor's counsel to claim a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3), which could be considerable in light of the Mortgagee's persistence in defending against these claims despite copious contrary precedent. *See In re Martin,* 72 B.R. 126, 129 (Bankr.E.D.Pa. 1987). However, as we noted in our supplemental Order of August 10, 1988, in *Herbert, supra,* we fail to see how a claim that the Mortgagee miscalculated the interest due on its claim violated Act 6 of 1974, 41 P.S. § 101, et seq., thus allowing the Debtor's counsel to invoke 41 P.S. § 503 as a basis for fees attributable to any but the time spent on the TILA violations. The only pertinence of the substance of Act 6 to this controversy was the Mortgagee's unsuccessful attempt to introduce it as an antidote to the Debtor's claim that the mortgage merged with the foreclosure judgment.

Finally, we note that the Debtor has only a short time-span to prepare an Amended Plan which we believe, *see* page 131 n. 3 *supra,* will demand significant additional

---

**4.** This Opinion, which was our original opinion in that case, was subsequently withdrawn and replaced with the Opinion reported at 70 B.R. 381 upon the debtor's Motion for Reconsideration. *See id.* at 382–83.

payments from the Debtor. We do not intend to allow any further continuances of the confirmation hearing, however, because of the previous delays in this case and the fact that, since submission of her Brief on September 20, 1988, the Debtor has been cognizant of her need to amend her Plan to provide for additional payments and should have the necessary revisions on the drafting board.[5]

An appropriate Order expressing our foregoing conclusions will be entered.

---

5. In the best case scenario expressed in the Debtor's Brief, the Debtor would be obliged to defer payment on almost $17,000.00.