**In re Mary Lou COLE, Debtor.**

**Mary Lou COLE, Plaintiff,**

v.

**SOVRAN MORTGAGE CORPORATION**
f/k/a VNB Mortgage Corporation,
Defendant.

**Bankruptcy No. 87–03928S.**
**Adv. No. 88–0484S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

July 15, 1988.

As Amended July 19, 1988.

Irwin Trauss, Community Legal Services, Inc., Philadelphia, Pa., for debtor.

Lawrence T. Phelan, Philadelphia, Pa., for Mortgagee.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant proceeding is an epilogue to our previous decision in another adversary proceeding, Adversary No. 87-0821S, which arose in the Debtor's main 13 bankruptcy case. Our Opinion in that proceeding, dated January 15, 1988, has been reported at 81 B.R. 326. In reaching that decision, we were influenced by the equities of allowing the Debtor to retain her home, yet assuring that her mortgagee, SOVRAN MORTGAGE COMPANY (hereinafter referred to as "the Mortgagee"), would be paid its due, *see id.* at 332, in setting aside a sheriff's sale of the Debtor's premises on the basis of 11 U.S.C. § 548(a)(2). However, we refrained from establishing the amount of the Mortgagee's resulting lien, because the record was somewhat unclear on the figures needed to resolve this issue. Consequently, we set forth a procedure which we anticipated would expeditiously resolve this final point. *Id.*

Unfortunately, both parties deviated from the simple procedure which we outlined in the Order accompanying that Opinion. This set the stage for the Debtor, despite not only the lack of an invitation to do so but express discouragement from doing so by the court, to attempt to relitigate our decision that the Mortgagee's pre-sale judgment lien could not be eliminated by this process.

In establishing the Mortgagee's claim at $14,893.19, we grant as much benefit to the Debtor's interest as the record and applicable law will allow. This ruling prompts us to amend our prior Order, and require the Debtor to remit at least $350.00 monthly to the Mortgagee, beginning in August, 1988. However, it totally overtaxes the Debtor's equities for her to suggest, as she argues herein, that the Mortgagee's claim could be eliminated entirely.

The Order accompanying our Opinion of January 15, 1988, initially directed the Mortgagee to take all necessary steps to undo the sheriff's sale of October 6, 1986, of the Debtor's premises and to file an Amended Proof of Claim in light of our Order on or before February 7, 1988. These were the first steps in a process contemplating Confirmation of the Debtor's Plan or amendments thereto on March 29, 1988.

The Mortgagee did not comply with either prong of our mandate in timely fashion. Ironically, it did file a timely appeal to the District Court from our Order, but it ultimately abandoned same. Forced to reschedule the process of determination of the Mortgagee's claim, we set May 24, 1988, as the Confirmation hearing date. However, on that date, we learned that the Debtor, on April 15, 1988, had filed its objection to the Mortgagee's belated claim in the form of this adversary proceeding. Moreover, contrary to our directive to notify the Mortgagee that objections to its Proof of Claim would be scheduled on May 24, 1988, the Debtor allowed the hearing in this matter to be scheduled on June 7, 1988.

On May 24, 1988, we offered the Debtor the option of treating the Mortgagee's claim outside of the Plan due to the belated filing of the claim. *See, e.g., In re Waldman,* 81 B.R. 313, 314 (Bankr.E.D.Pa.1987); and *In re Evans,* 66 B.R. 506, 509-10 (Bankr.E.D.Pa.1986), *aff'd,* 77 B.R. 457 (E.D.Pa.1987). She declined this offer. We then rescheduled the hearings on all matters, including the merits of this proceeding, on June 7, 1988.

On June 7, 1988, the parties stipulated that the record of this proceeding could include the sheriff's deed from the October 6, 1986, sale; the sheriff's ledger of disbursements of the proceeds of the sale; and the docket entries of the state-court foreclosure suit. We granted the request of the Mortgagee to include the Stipulation of Facts and Documents which constituted the record in Adversary No. 87-0821S as part of the record of this proceeding. We allowed the parties until June 21, 1988, and July 5, 1988, respectively, to submit Briefs.

Unfortunately, neither Brief was of great assistance to us. The Mortgagee's Proof of Claim had attached to it the Debtor's original mortgage of February 26, 1971, and its entire text was as follows:

| | |
|---|---|
| $12,483.91 | Judgment entered on 07/30/81 |
| 3,465.98 | Foreclosure Cost |
| 2,649.25 | Taxes and Insurance paid since judgment |
| 4,504.47 | Accrued interest |
| 481.30 | Legal fees |
| $23,584.91 | TOTAL |

The Debtor, declining any meaningful analysis of the components of this claim, argued that the claim should be disallowed entirely, on reasoning discussed hereinafter. The Mortgagee responded with a witty [1] but extremely short Brief enhanced in size only by an attempt to improperly supplement the record with mostly illegible copies of certain internal records of the Mortgagee not included among the documents admitted into the record at the hearing on June 7, 1988.

The Debtor, as we indicate below, argues that the Mortgagee is not entitled to *any* claim against her whatsoever. Her initial contention is that the Mortgagee's lien, under 11 U.S.C. § 548(c), "cannot exceed $2,768.15." That Section of the Code provides as follows:

> (c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

The bases of this contention are the following premises: (1) A mortgage merges into a foreclosure judgment based upon it. *See In re Herbert, Herbert v. Federal Nat'l Mortgage Ass'n*, 86 B.R. 433, 436–37 (Bankr.E.D.Pa.1988); (2) A judgment is discharged by a sheriff's sale conducted in execution upon it. *See e.g., Rosenberg v. Cupersmith*, 240 Pa. 162, 167–68, 87 A. 570, 571 (1913); *Foulke v. Millard*, 108 Pa. 230, 235, 236 (1885). (3) Thus, the mortgage and the judgment were merged into and hence were eliminated by the sheriff's sale of October 6, 1986; (4) A transfer which has been avoided may be preserved for the benefit of the estate. *See* 11 U.S.C. §§ 522(i), 551; (5) Therefore, the avoidance of the sheriff's sale of the Debtor's property eliminates the Mortgagee's pre-sale mortgage and judgment for the benefit of the estate; (6) Section 548(c) allows a transferee in a transfer avoided pursuant to § 548(a) to recover only sums for which the transferee paid which benefited the Debtor's estate; and (7) Only the Mortgagee's payments of $2,768.15 for unpaid water bills and real estate taxes were payments which benefited the estate.

The Debtor then argues that even the payment of the $2,768.15 is too generous and that the Mortgagee is not entitled to anything. The basis of this contention is that the Mortgagee was not a good faith purchaser at the sheriff's sale in light of its knowledge of the Debtor's insolvency and the lack of fair consideration paid by it, citing *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1296–99 (3d Cir. 1986).

As the Mortgagee's Brief points out, the initial hurdle that these arguments face is the fact that they were already briefed by the Debtor in Adversary No. 87–0821S and rejected by us. The pertinent passage of

---

1. A covering letter assured us that it contained "absence of any reference to ducks and elephants." *See* 81 B.R. at 327. This comment was directed towards the Mortgagee's Statement, in its Brief in Adv. No. 87–0821, that the Debtor was "trying to dress a duck in an elephant suit in the hope that the Court won't notice."

In the Defendant's Reply Brief, at 1, the Mortgagee commented as follows about the Debtor's efforts to rehash her contention that the Mortgagee should lose its entire lien as a consequence of the setting aside of the sheriff's sale:

"The threshold question presented to instant counsel is just how to respond to this nonsense. Ridicule would certainly seem appropriate, as would declarations of disdain and disbelief. One could also express outrage in various forms, yet, any response might add a blemish of dignity to the otherwise vacuous proposition. Thus, it appears the best approach would be to simply say nothing and enjoy the Court's favor for not wasting its time."

our prior Opinion, 81 B.R. at 331–321, reads as follows:

> Having determined that the sale may be set aside does not constitute an unmitigated blessing for the Debtor and thus, as the Mortgagee suggests, an undeserved windfall to her. *Contrary to the Debtor's suggestion, we believe that it is clear that the Mortgagee is entitled to have its lien satisfied in the sale reinstated against the premises under 11 U.S.C. § 548(c) when the sale is set aside.* We read § 548(c) as addressing solely the issue of whether the transferee or obligee, i.e., the purchaser at the sale, has a right to the lien against the Debtor's premises in light of the frustration of his bargain. It is the good faith of the purchaser which is the measure of whether a lien is warranted. *There is no suggestion in § 548(c) that a judgment creditor whose lien was satisfied in the avoided sale should not have this lien reinstated.* When a judgment creditor purchases at his own sale, he has rights in two capacities, i.e., as judgment creditor and as purchaser. We believe that, pertinent to its capacity as judgment creditor, *nothing in § 548(c) suggests that it should lose its judgment lien, no matter what the circumstances of the sale were.* The question of the judgment creditor's good faith is only relevant in determining whether it is entitled to an additional lien for any outlay of value to the Debtor pertinent to its capacity as purchaser (emphasis added).

■ The initial principle militating against the Debtor is the "law of the case" doctrine, i.e., the refusal of courts to reopen what has already been decided by them. *See, e.g., Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912); *Cowgill v. Raymark Industries, Inc.,* 832 F.2d 798, 802–04 (3d Cir.1987); and *Zichy v. Philadelphia,* 590 F.2d 503, 508 (3d Cir.1979). While we recognize that this doctrine should not constitute a mandate to adhere to a previous erroneous decision, we believe that the doctrine should cause a court to

change a prior ruling in a case only where that ruling is "clearly erroneous" and it "would work a manifest injustice" to adhere to it. *Arizona v. California, supra,* 460 U.S. at 618 n. 8, 103 S.Ct. at 1931 n. 8; *Schultz v. Onan Corp.,* 737 F.2d 339, 345 (3d Cir.1984); and *Swietlowich v. County of Bucks,* 610 F.2d 1157, 1164 (3d Cir.1979). Here, we reiterated to both parties prior to the briefing that we did not consider the foregoing language of our previous decision incorrect and that we would adhere to it in deciding this proceeding. We merely directed the parties, as we had in the text of our prior Opinion, 81 B.R. at 332, to devote their efforts to ascertainment of the correct amount of the claim within the parameters set forth in that Opinion.

Furthermore, we do not accept the accuracy of applying several of the premises posited by the Debtor to this fact situation. Since the sale has been set aside, we fail to see how its effect as a "discharger of obligations" can remain intact. In all of the state-court cases cited by the Debtor, the issue at hand was the impact of an admittedly valid sheriff's sale upon various liens and judgments. In that context alone did the state courts hold that a sheriff's sale discharged or divested certain liens and judgments. None of these cases suggest that a sheriff's sale which has been *set aside* has *any* impact on liens and judgments. *See In re Burch, Burch v. Federal Nat'l Mortgage Ass'n,* 88 B.R. 686, 692–93 (Bankr.E.D.Pa.1988).

The principal fallacy in the Debtor's reasoning is continuing, despite the quoted passage in our previous Opinion, to confuse the Mortgagee's rights as a judgment creditor with its rights as a purchaser at the sale. However, once again: the transfer effected by the sheriff's sale of October 6, 1986, was quite distinct from the initial transaction of February 26, 1971, by which the Debtor acquired her property and the Mortgagee obtained its mortgage as security for the payment of the purchase price. The setting aside of the October 6, 1986, sale, had no impact on the validity of the February 26, 1971, transaction. The mortgage and the judgment arising from the

1971 transaction are therefore restored to their prior position by our Order avoiding the October 6, 1986, sheriff's sale.

The cases cited by the Debtor construing 11 U.S.C. §§ 522(i) and 551 also pertain to the issue of the impact or divestiture of liens of creditors other than those which were the subject of transfers under attack. *E.g., In re Barry,* 31 B.R. 683 (Bankr.S.D. Ohio 1983) (trustee has benefit of senior lien in determination of status of junior lien despite avoidance of senior lien under 11 U.S.C. § 724(a)); *In re Steele,* 27 B.R. 474 (Bankr.W.D.Wis.1983) (avoidance of preferential attachment of security interest does not effect avoidance of second mortgage junior to security interest); and *In re Losieniecki,* 17 B.R. 136 (Bankr.W.D.Pa.1981) (avoidance of judgment lien prior to mortgage under 11 U.S.C. § 522(f)(1) does not preserve mortgage. *But see In re Simonson,* 758 F.2d 103, 105–06 (3d Cir.1985)). The state-court divesture-of-lien cases *do* not involve the remaining rights of the judgment creditor who conducted the sale. The above bankruptcy cases similarly do not address the remaining rights of the parties whose transfers were avoided. Here, however, we *are* concerned with the remaining rights of the Mortgagee after *its own* sale has been set aside.

A similar misapplication of principles of law established in a completely different context from that of the facts at hand occurs when the Debtor argues that *Tabor Court, supra,* supports the result that the Mortgagee is not a "good faith" transferee. In *Tabor Court,* the original mortgage loan transaction with the creditor in issue was attacked as a fraudulent conveyance. Here, the Debtor levels no attack on the February 26, 1971, transaction by which the Mortgagee became a secured creditor of the Debtor. The attack is limited solely to the October 6, 1986, sheriff's sale, which in no way implicated the validity of the 1971 mortgage and foreclosure judgment (entered in July, 1981) which preceded the sale.

Therefore, we conclude that most of the Debtor's premises are faulty and do not support the conclusion that either the Mort-

gagee's mortgage or its judgment are adversely impacted by our invalidation of the October 6, 1986, sheriff's sale. Nor does the record support the conclusion that the Mortgagee, qua purchaser at the sale, acted in bad faith. We believe that it was much less apparent to the Mortgagee here that the October 6, 1986, sale was subject to attack as a fraudulent conveyance than was the transaction at issue in *Tabor Court* to the creditor there. We therefore adhere to our previous conclusion that the Mortgagee was a good faith transferee entitled to recover the value of its judgment and the payments made by it for the benefit of the Debtor in the transfer.

We note that our result is consistent with that reached in application of § 548(c) in the small body of comparable cases instituted under § 548(a)(2), as well as being consistent with equitable principles. Our holding, in *In re Butler,* 75 B.R. 528, 533 (Bankr.E.D.Pa.1987), that the similarly-situated mortgagee was entitled to retain a lien for the value, plus taxes and costs extended in the sale, was affirmed by the district court. C.A. No. 87–04455 (E.D.Pa. Dec. 18, 1987). We reasoned similarly in *In re Corbett,* 80 B.R. 32, 38 (Bankr.E.D.Pa.1987). A similar holding was reached by Judge Fox of this court in *In re Norris,* Bank. No. 87–03861F, Adv. No. 87–0866F, slip op. at 12 (Bankr.E.D.Pa. April 7, 1988). Also, our respected predecessor, former Chief Judge Goldhaber, concluded much to the same effect in his seminal decision in this area, *In re Jones,* 20 B.R. 988, 994–96 (Bankr.E.D.Pa.1982).

In addition to having no sound precedential basis, the Debtor's reasoning would work an unconscionable windfall in her favor at the expense of the Mortgagee. By its act of casting a low bid at a public sheriff's sale of a premises where no bidder appeared, the Mortgagee, according to the Debtor, should not only have its sale set aside, but should also be shorn of its foreclosure judgment and supporting mortgage. The practical effect of such a ruling would eliminate the most palatable aspect of the use of § 548(a) supporting the result in this case: permitting a needy homeowner to retain her home concomitantly

438

with her recognizing an obligation to pay off the mortgagee. The Debtor's attempt to argue that a mortgagee's judgment and mortgage should be eliminated by setting aside a sheriff's sale would thus have the distinct practical effect of causing courts to hesitate to apply § 548(a)(2) on the ground of equitable considerations in many cases where it might otherwise do so on the basis of such considerations.

■ Remaining before us is the ascertainment of the legitimate amount of the Mortgagee's proof of claim and reassessment of the Debtor's prospects in proposing a confirmable plan directed at saving her home. Fixated as she is on challenging our prior holdings, the Debtor devotes very limited attention to the issue that we expressly requested the parties to address: what is the correct amount of the Mortgagee's claim within the parameters of our previous decision? In a footnote in her Brief, the Debtor suggests that the claim might be measured by the amount of the judgment, as reassessed by the Mortgagee on August 27, 1986, i.e., $11,755.41, plus the $2,768.15 in water bills and taxes paid, or $14,523.56. The Mortgagee, on the other hand, altering the position assumed in its Proof of Claim in several respects, now proposes the following computation:

| | |
|---|---|
| Judgment | $11,755.41 |
| Sheriff's costs | 3,465.98 |
| Taxes, insurance, and FHA premiums | 2,893.35 |
| Accrued interest at $2.22 per diem | 4,504.47 |
| Subtotal | $22,619.21 |
| Less payments by Debtor | 991.08 |
| TOTAL | $21,628.23 |

The only "explanations" of these figures provided by the Mortgagee are as follows:

The Court will no doubt be interested in how the debt is now significantly greater than the judgment entered in July of 1981. There is a very simple reason for this. Pursuant to the terms of the mortgage, Sovran was obligated to continue to pay taxes and insurance and FHA premiums as they became due. The Court can certainly take judicial notice that the taxes due on the debtor's

premises were paid during the intervening years, and, given the debtor's admitted insolvency, it would strain credulity to imagine the debtor having paid them.

The Court can also readily calculate the amount of interest on the mortgage, which has been admitted into evidence. As the sale has been set aside, the status quo has been restored, and the interest due Sovran continues to accrue.

We agree that we can start with the figure of $11,755.41, at which damages were assessed on the Mortgagee's July, 1981, foreclosure judgment on August 27, 1986. We also can agree that the sheriff's costs in the amount of $3,465.98, which includes the $2,768.15 paid on the Debtor's behalf by the Mortgagee, are properly added as a component of the claim. However, recalling that the burden is upon the Mortgagee to establish the validity of all of the components of its claim by a preponderance of the evidence, see In re Lewis, 80 B.R. 39, 41 (Bankr.E.D.Pa.1987), we are unable to find any justification for the addition of the entries for "Taxes, Insurance, and FHA premiums" and "Accrued interest."

■ Contrary to the Mortgagee's assertion, we certainly cannot take judicial notice that the Mortgagee continued to pay taxes, insurance, and FHA premiums for any period of time. This "fact" is not "generally known" nor "capable of accurate and ready determination." See Federal Rule of Evidence 201(b); and In re Russell, 72 B.R. 855, 868 (Bankr.E.D.Pa.1987). To the contrary, we would assume that the taxes were included in the $3,465.95 sum representing costs paid to the sheriff, and that all payments, including insurance, at least through that date, would have been taken into account when the Mortgagee reassessed damages on August 27, 1986. There is no evidence of payment of taxes or insurance thereafter. We will not consider documents attached to the parties' Briefs and not admitted into evidence, like the Mortgagee's largely illegible records attached to its Brief here, as part of the record in this proceeding. See Russell, supra, 72 B.R. at 868. We were indulgent in allowing the Mortgagee to admit the entire

record in the other adversary proceeding into the record here. *See In re Nicolet, Inc.*, 80 B.R. 733, 742–44 (Bankr.E.D.Pa. 1987). We cannot and will not indulge the Mortgagee as to the making of the record any further. We shall therefore not allow any sums for "Taxes, Insurance, and FHA premiums." *Accord, In re Jablonski*, 70 B.R. 381, 389 (Bankr.E.D.Pa.1987), *remanded*, 88 B.R. 652, 657–58 (E.D.Pa. 1988).

■ We believe that the measurement of post-judgment interest is, as the Mortgagee suggests, readily within the power of this court to calculate. However, unlike the inscrutable basis utilized by the Mortgagee to calculate the generous sum of $4,504.97, our method of calculation is controlled by our recent decision in *Herbert, supra,* 86 B.R. at 436–37, 438 n. 3, and results in computation of a much lower figure. Consistent with that decision, we believe that the Mortgagee is entitled to post-reassessed-judgment-interest on the balance of $11,755.41 at the statutory rate of six (6%) percent per annum for the 343–day period between August 23, 1986, and August 4, 1987, when the Debtor filed her bankruptcy petition. This calculates to interest of $662.88 (.0001644 per day × 343 days × $11,755.41).

The Mortgagee accords the Debtor credit of $991.08 for certain payments. We will accept this figure despite its lack of support in the record, as it benefits only the Debtor. Our calculation of the claim of the Mortgagee is therefore as follows:

| | |
|---|---|
| Judgment | $11,755.41 |
| Costs | 3,465.98 |
| Interest | 662.88 |
| Subtotal | $15,884.27 |
| Less payments by Debtor | 991.08 |
| TOTAL | $14,893.19 |

As three months have already been lost from our projected Confirmation date of March 29, 1988, we once again provide specific guidelines for shepherding the case through to Confirmation, with allowances for possible Plan Amendments by the Debtor in light of this decision and opportunity of the Mortgagee to object to Confirmation of any proposed Plan. Further, we must observe that the Debtor's projected Plan payments of $200.00 monthly directly to the Mortgagee over a 60–month duration, will generate only $12,000.00. If her Plan is to pay the entire balance due to the Mortgagee and defer same over the remaining approximately 48 months of her Plan, she will most likely be obliged to pay interest at eight (8%) percent for this period, adding approximately $2,500.00 to the sum necessary to fund the Plan. *See In re Mitchell,* 77 B.R. 524, 527 (Bankr.E.D.Pa. 1987); *In re Mitchell,* 75 B.R. 593, 598–99 (Bankr.E.D.Pa.1987); and *In re Crompton,* 73 B.R. 800, 806–07 (Bankr.E.D.Pa.1987). Even without considering any Trustee's commissions, on the theory that payments may somehow be allowed outside the Plan on the theories accepted by us in *Waldman, supra;* and *Evans, supra,* the total sum necessary to fund the Plan approaches $17,500.00. Payments of this total sum over 48 months would require payments in excess of $360.00 monthly. Therefore, beginning in August, 1988, and pending Confirmation, we are obliged to require the Debtor to remit at least $350.00 monthly to the Mortgagee to retain some realistic prospect for proposing a confirmable Plan.

An Order consistent with the foregoing will be entered.

### ORDER

AND NOW, this 15th day of July, 1988, upon receipt of three exhibits which, with the record in Adversary No. 87–0821S, constituted the record in this proceeding, it is hereby ORDERED as follows:

1. The Secured Claim of the Defendant, SOVRAN MORTGAGE CORPORATION f/k/a VNB MORTGAGE CORPORATION, is determined to be $14,893.19.

2. On or before July 25, 1988, the Debtor shall file and serve any Amended Chapter 13 Plan upon the Defendant, the Court, and the Trustee, and any other parties required to be served in conformity with Local Rule 3019.1, as amended July 1, 1988.

3. On or before August 9, 1988, any interested party, including the Mortgagee, shall file and serve upon the Debtor, the

440

Court, and the Trustee, any Objections to any pending Plan or Amended Plan.

4. The Confirmation Hearing and hearing on the Trustee's Motion to Dismiss on the grounds of feasibility, presently scheduled on July 19, 1988, is postponed until TUESDAY, AUGUST 16, 1988, at 10:00 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106. *No continuances shall be granted* and this case will be dismissed if it is not able to be confirmed on that date.

5. The Debtor shall remit the sum of Three Hundred and Fifty ($350.00) Dollars to the Mortgagee on or before the tenth day of August, 1988, and the fifteenth day of each month thereafter, pending Confirmation of any Chapter 13 Plan or Amended Plan filed by her.