In re James CERVANTES and Patricia Cervantes, Debtors.

James CERVANTES and Patricia Cervantes, Plaintiffs,

v.

GENERAL ELECTRIC MORTGAGE COMPANY, Defendant.

Bankruptcy No. 85–02712G.
Adv. No. 85–0789G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 8, 1986.

818

David A. Searles, Community Legal Services, Philadelphia, Pa., for debtors/plaintiffs, James Cervantes and Patricia Cervantes.

Sheldon C. Jelin, Philadelphia, Pa., for defendant, General Elec. Mortg. Co.

James J. O'Connell, Philadelphia, Pa., Trustee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The issue at bench is whether we should grant plaintiff-debtors' motion for summary judgment and deny defendant's cross-motion for summary judgment based on the defendant's failure to meet certain disclosure requirements under the federal Truth in Lending Act, ("the TILA"), 15 U.S.C. § 1601–1667c and Regulation Z of the Federal Reserve Board, 12 C.F.R. § 226.1 *et seq.* For the reasons set forth below, we will grant the debtors' motion.

The undisputed facts of this case are as follows:[1] On or about March 31, 1983, the debtor-plaintiffs, James and Patricia Cervantes, purchased a home located in Philadelphia. The plaintiffs obtained a 30 year mortgage from Bankers Mortgage Service, which was subsequently assigned to the defendant, General Electric Mortgage Co. After making only ten payments on the mortgage, the debtors defaulted, and no payments have been tendered since February 1, 1984.

On May 28, 1985, General Electric sent to the plaintiffs a Notice of Intention to Foreclose pursuant to Pa.Stat.Ann. tit. 41 § 403 (Purdon 1986). Thereupon, on July 1, 1985,

the debtors filed a petition seeking relief under chapter 13 of the Bankruptcy Code ("the Code"). At that time, General Electric had not yet initiated foreclosure proceedings. Subsequently, the defendant filed a proof of claim to which the plaintiffs objected. Plaintiffs then filed the instant summary judgment motion alleging that the defendant's secured claim should be reduced because of certain violations of the TILA.

■ The purpose of the TILA is to assure the informed use of credit terms so that consumers can more readily compare different financing options and costs. *In re Solis,* 38 B.R. 293, 295 (Bankr.E.D.Pa. 1984). Under the TILA, creditors are required to make certain disclosures in consumer credit transactions. The disclosure requirements are set forth in Regulation Z, 12 C.F.R. § 226.1, *et seq.,* as authorized by 15 U.S.C. § 1604, and a creditor who fails to comply with the disclosure requirements is liable to the consumer under the statute's civil liability section. 15 U.S.C. § 1640(a). The amount of liability is calculated as any actual damages plus a civil penalty of twice the finance charge subject to a minimum award of $100.00 and a maximum award of $1,000.00. *Id.*

The debtors allege three violations of the TILA, the first of which is that the disclosures required by 15 U.S.C. § 1638(a)(9) and 12 C.F.R. § 226.18(m) were not given. Under these provisions, the secured creditor must disclose a statement that a security interest has been taken in the property purchased as part of the credit transaction or in other property not purchased as part of the credit transaction identified by item or type. 15 U.S.C. § 1638(a)(9). *Accord* 12 C.F.R. § 226.18(m).

■ The plaintiffs argue that the paragraph labeled *"Security"* located in the middle of the disclosure statement shows that the only security interest taken by the mortgagee is the real property purchased

---

1. Under Fed.R.Civ.P. 56 summary judgment can be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

in the transaction. However, the plaintiffs note that the mortgage instrument includes a security interest in the debtors' presently owned and after-acquired personalty which was not indicated on the disclosure statement. The mortgage instrument provides in pertinent part:

The buildings and improvements on said premises as well as all alterations, additions or improvements now or hereafter made to said premises, as well as all alterations, additions or improvements now or hereafter made to said premises, and any and all appliances, machinery, furniture and equipment (whether fixture or not) of any nature whatsoever now or hereafter installed in or upon said premises.

The disclosure statement makes no mention of the security interest taken by the defendant in the plaintiffs' presently owned and after-acquired personal property. This non-disclosure violates both the spirit and the letter of the TILA, which was intended to protect borrowers from hidden finance charges and security interests. *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 220–23, 101 S.Ct. 2266, 2274–76, 68 L.Ed.2d 783 (1981).

The defendant contends that it has no security interest in the plaintiffs' personal property because it never filed a financing statement. Hence, defendant argues that, because the recording of a mortgage creates a lien against real property only, no lien against the debtors' personal property was created. As such, the defendant contends, the disclosure statement properly identified a security interest in the real estate only.

█ But we conclude that the defendant's contention is without merit. The filing of a financing statement is relevant for priority purposes only. It does not determine the existence or non-existence of a security arrangement. In the instant case, a security interest in the plaintiffs' personalty existed at the time General Electric provided the disclosure statement to the debtors. The fact that the security agreement was contained in the mortgage instru-

ment rather than in some other document does not affect its validity. Under the UCC, as adopted in Pennsylvania, a security interest in personal property can be created by *any* writing describing the collateral by type. *See* 13 *Pa.Cons.Stat.Ann.* §§ 9203(a)(1), 9105 (Purdon 1984). The writing does not have to be labeled "security agreement", but can be in any form. *See, e.g., In re Bellinger Corp.*, 614 F.2d 924, 927 (3d Cir.1980). Therefore, since a security interest in personal property existed at the time of the credit transactions, the defendant's failure to disclose it in the disclosure statement violates the TILA. This conclusion is consistent with our recent decision in *In re Perry*, 59 B.R. 947 (Bankr.E.D.Pa.1986), wherein we held that a disclosure statement which included security interests not set forth in the mortgage instrument violated the TILA. 56 B.R. at 951. The conclusion in *Perry*, which is equally applicable here, is based on the theory that violations of the TILA are governed by a strict liability standard. As such, a creditor's failure to reveal in the disclosure statement the exact nature of the security interest violates the TILA even if the harm to the debtor is slight. *See Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 250 (3d Cir.1980). Accordingly, we find that the plaintiffs in the instant case are entitled to set off $1,000.00 against the defendant's claim.

█ Although it is not necessary to address the debtors' second argument with respect to the defendant's violation of certain disclosure requirements, we find that the defendant's failure to print the annual percentage rate more conspicuously .than the other required terminology equally entitles the debtors to relief.

12 C.F.R. § 226.18(e) requires that the creditor must disclose the annual percentage rate in loan transactions. This disclosure is deemed so crucial to the purposes of the TILA that the Federal Regulations require that the annual percentage rate be disclosed more conspicuously than the other required disclosures. The regulations provide in pertinent part:

The terms "finance charge" and "applied percentage rate" ... shall be more conspicuous than any other disclosures, except the creditor's identity....

12 C.F.R. § 226.17(a)(2).

In the instant case, the defendants failed to meet this disclosure requirement. The term "annual percentage rate" is printed no more conspicuously than the other terms such as "amount financed" and "total of payments." This violates 12 C.F.R. § 226.17(a)(2), and, accordingly, the plaintiff would equally be entitled to a $1,000.00 recoupment of the defendant's claim under this provision.

Another issue in the instant action is whether the defendant's claim for $75.00 in attorney's fees and $106.80 for a property inspection fee should be allowed pursuant to 41 Pa.Stat.Ann. § 404(b)(3), and § 406(3). These provisions give residential mortgage debtors the right to cure in situations where the creditor has filed a notice of intention to foreclose. Here, the debtors' chapter 13 plan is to cure the default on their mortgage under 11 U.S.C. § 1322(b)(5). To cure a default under Pennsylvania law, the debtor must provide attorneys' fees pursuant to § 404(b)(3) and § 406(3). These sections provide:

To cure a default under this section, a residential mortgage debtor shall ... pay or tender any reasonable fees allowed under section 406 and the reasonable costs of proceeding to foreclose as specified in writing by the residential mortgage lender actually incurred to the date of payment.

41 Pa.Stat. § 404(b)(3).

Section 406(3) provides:

Prior to commencement of foreclosure or other legal action attorneys' fees which are reasonable and actually incurred *not in excess of fifty dollars ($50)* provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.

41 Pa.Stat. § 406(3) (emphasis added).

The defendant states that at the time the proof of claim was filed, the attorney's fee incurred in this matter was $75.00. The defendant contends that this fee, which is $25.00 in excess of the statutory amount, is reasonable in light of the time necessary for preparation and filing of the proof of claim.

 We disagree with the defendant's contention for two reasons. First, § 406(3) states that a residential mortgage lender is entitled to attorneys' fees "not in excess of fifty dollars *prior to commencement of foreclosure or other legal action*". (emphasis added) Here, the defendant had not yet instituted foreclosure proceedings when the bankruptcy petition was filed and, as such, is not entitled to an amount in excess of $50.00. Second, assuming without deciding that § 406(3) can be broadly construed so that the phrase "other legal action" includes the filing of a proof of claim in bankruptcy, we find that an amount in excess of $50.00 in this case is unreasonable. Therefore, under § 406(3), the defendant would appear to be entitled to an attorney's fee of only $50.00.

 In the alternative, the defendant argues that it is entitled to an attorney's fee of $75.00 under 11 U.S.C. § 506(b) of Code. This section provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under Subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b).

The operative language of § 506 as applied to the case at bench is "any reasonable fees ... *provided for under the agreement* under which such claim arose." (emphasis added). Here, the mortgage instrument allows attorneys' fees only with respect to the institution of foreclosure proceedings. There is no contractual language which provides for attorneys' fees in bankruptcy proceedings. The Code does

not give the defendant more rights than that which is contained in the mortgage document. As such, the defendant has no independent claim to attorneys' fees under § 506(b). *See In re Cosby*, 33 B.R. 949, 951 (Bankr.E.D.Pa.1983) (rights of a holder of a claim secured only by a security interest in real property that is the debtor's principal residence are contained in the loan agreement ... recovery of attorneys' fees is controlled by the mortgage instrument).

■ In addition to attorney's fees, the defendant claims that it is entitled to a property inspection fee in the amount of $106.80 pursuant to 41 Pa.Stat.Ann. § 404(b)(3) (Purdon 1986). These sections provide that a debtor must pay the reasonable costs of foreclosure as specified in writing in order to cure a default. In the instant case, the mortgage instrument provides for the recovery of foreclosure costs. We find that this provision includes property inspection fees, and, accordingly, since there has been no evidence shown that the fee in this case is unreasonable, we conclude that the defendant is entitled to the sum of $106.80.

■ Finally, the last issue is whether the defendant is entitled to interest on arrearages arising from a secured debt. The debtors claim that if they had not filed for bankruptcy but instead cured their default under Pennsylvania law, they would not have been required to pay interest. Therefore, the debtors argue that they should not be liable for interest payments just because they opted to cure the default through chapter 13 proceedings. We disagree. The debtors chose bankruptcy and, accordingly, we are governed by the Code and our previous decisions regarding interest payments in chapter 13 proceedings. We have held that a mortgagee is entitled to interest on that portion of its claim for mortgage arrearages which represents interest, late charges, attorney's fees and an escrow deficit. *In re Evans*, 20 B.R. 175, 177 (Bankr.E.D.Pa.1982). *See also In re Lynne McCall*, 57 B.R. 642, 643–44 (Bankr. E.D.Pa.1986) (under chapter 13 plan, debtor must pay interest on arrearages arising from a secured debt to the extent that those arrearages are attributable to interest on the principal debt even though the loan agreement does not provide for such interest). Therefore, since we have held that Section 1325(a)(5)(B) of the Code provides that a secured creditor is entitled to the present value of its allowed secured claim, which includes interest on arrearages, and since there is no assertion that the interest included in the defendant's claim is unreasonable, we conclude that the defendant is entitled to its claim for interest.

### ORDER

AND NOW, to wit, this 8th day of December, 1986, upon consideration of the plaintiff's motion for summary judgment, it is hereby

ORDERED and DECREED that:

1. Plaintiffs' motion for summary judgment is GRANTED to the extent that plaintiffs are entitled to setoff $1,000.00 against the defendant's claim.

2. Defendant's cross-motion for summary judgment is DENIED.

3. Defendant's claim for attorney's fees is DISALLOWED pursuant to 41 Pa.Stat. Ann. § 406(3) to the extent that it exceeds $50.00.

4. Defendant's claim for its property inspection fee in the amount of $106.80 is ALLOWED.

5. Defendant's claim for interest on the arrearages is ALLOWED, at the rate set forth in the mortgage.