**In re Santha E. GARNETT, Debtor.**

**Bankruptcy No. 88–11457S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

April 25, 1989.

Roger Ashodian, Community Legal Services, Inc., Chester, Pa., for debtor.

Edward Sparkman, Philadelphia, Pa., standing chapter 13 trustee.

Lawrence T. Phelan, Philadelphia, Pa., for E.E. Mortg. Corp.

### OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The only issue remaining for us to decide in resolving the Debtor's Objections to a statement of arrearages of her Mortgagee in the instant Chapter 13 bankruptcy case is whether the Mortgagee is entitled to recover, as part of the "foreclosure costs and fees" incurred in pre-petition foreclosure litigation, $156.00 for the cost of preparation of a title report. We are inclined to emphasize the reasonability of an element of costs rather than the clarity of the wording of an adhesion clause in mortgage documents authorizing same in determining what costs are allowable to a mort-

gagee in these circumstances. Therefore, we conclude that the title report charge in issue is allowable to the Mortgagee.

The Debtor, SANTHA E. GARNETT (herein "the Debtor"), filed the instant Chapter 13 bankruptcy case on April 29, 1988. Administration of the case was delayed by the failure of the Debtor to file her Chapter 13 Plan, which contemplated curing her mortgage arrears, until June 21, 1988. On May 11, 1988, the mortgagee of her residence, E.B. MORTGAGE CORP. (herein "the Mortgagee"), filed a proof of claim reciting a "Total Debt" of $27,897.47 and a "Reinstatement Amount" of $5,916.34. Among the components of both totals were charges for a "Title Report" of $156.00 and for a "Legal Fee" of $325.00.

At the initial hearing to consider confirmation of the Debtor's Plan, scheduled on January 19, 1989, the Debtor requested a continuance until March 9, 1989, in order to pursue an Objection to the Mortgagee's aforesaid proof of claim. The Objection was duly filed on January 25, 1989, and listed for a hearing on February 16, 1989.[1] The Mortgagee answered and the parties reported to us, on February 16, 1989, that the matter had been settled and a Stipulation resolving it would be filed. Therefore, we were extremely surprised to be advised by the parties, at the continued Confirmation Hearing on March 9, 1989, that the Objections were supposedly under advisement by the court (they were not, to our knowledge) and that confirmation could not take place because they had not yet been resolved.

We were troubled by the parties' inaccurate report to us on February 16, 1989. Nevertheless adhering for the most part pursuant to the parties' request on March 9, 1989, we issued an Order of March 10, 1989, directing the parties to file a Stipulation of Facts which would constitute the record on or before March 17, 1989, and Briefs supporting their respective positions on or before March 31, 1989 (the Debtor), and April 14, 1989 (the Mortgagee).

The Stipulation was timely filed. Therein, the parties agreed that the Mortgagee's alleged "Reinstatement Amount," relevant to the Debtor's Plan to cure mortgage arrears, would be reduced by $1,125 to $4,791.34 due to excessive legal fees, see In re Nickleberry, 76 B.R. 413, 422–23 (Bankr.E.D.Pa.1987), and the Debtor's admittedly-valid recoupment claim under the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. The only issue said to be remaining was the validity of the charge for the title report. Attached to the Stipulation were the title report and title insurance provided in connection therewith obtained by the Mortgagee in the course of filing of a pre-petition state court mortgage foreclosure action against the Debtor, which it was agreed had cost $156.00, and a copy of the parties' Mortgage, dated June 26, 1986. The pertinent portions of the Mortgage, which purportedly authorized the pass-through of the title charge to the Debtor, read as follows:

9. That if at any time, a Writ of Fieri Facias or other execution is properly issued upon a judgment obtained upon said note, or if a Writ of Scire Facias is issued or other foreclosure proceedings instituted upon this mortgage, an attorney's commission for collection, viz: [blank— "five" should apparently have been written in] per centum (5%) of said principal debt or sum, shall be payable, and *shall be recovered in addition to all principal and interest and all other recoverable sums then due, besides costs of suit. . . .*

10. . . . .

And provided also, that when as soon as the principal debt or sum hereby secured shall become due and payable as aforesaid, or in case default shall be made in the payment of any installment of principal and interest, or any monthly payment hereinabove provided for, or in the keeping and performance by the Mortgagor of any of the terms, conditions or covenants of the mortgage or

---

1. This listing was premature, because, pursuant to Bankruptcy Rule 3007, the notice of a hearing on an objection to a proof of claim must be served upon the claimant "at least 30 days prior to the hearing."

the note secured hereby, it shall and may be lawful for said Mortgagee forthwith to bring an Action of Mortgage Foreclosure, to sue out a Writ of Scire Facias, or to institute other foreclosure proceedings upon this mortgage, and to proceed to judgment and execution for recovery of said principal debt, all interest thereon, all sums advanced for payment of any ground rent, taxes, water rents, charges, claims or insurance premiums as aforesaid, *and all other recoverable sums, together with an attorney's commission for collection,* without further stay of execution or other process, any law, usage or custom to the contrary notwithstanding (emphasis added)....

The Debtor argues that, pursuant to our reasoning in such cases as *In re Tashjian,* 72 B.R. 968, 974–76 (Bankr.E.D.Pa.1987); *In re Jablonski,* 70 B.R. 381, 388–90 (Bankr.E.D.Pa.1987), *aff'd,* 88 B.R. 652 (E.D.Pa.1988); and *In re Johnson–Allen,* 67 B.R. 968, 975–77 (Bankr.E.D.Pa.1986), we should apply 11 U.S.C. § 506(b) and conclude, under the four-prong test for allowing claims under § 506(b) established in *Jablonski* and *Tashjian,*[2] that the failure of the Mortgage to clearly designate title report charges as part of its recoverable "costs of suits" or "sums" due to it upon suit is fatal to the Mortgagee's attempt to pass this cost through to the Debtor. The conclusion reached in *In re Bertsch,* 17 B.R. 284, 287–88 (Bankr.N.D.Ohio 1982), that passing a title report charge through to the mortgagor was justified, was distinguished by the Debtor because the rules of the local Ohio court there required "evidence of the state of the record title of the premises," which is allegedly not necessary here. Our holding allowing a mortgagee to recover $161.00 from the Debtor-mortgagor for a title report in *In re Vitelli,* 93 B.R. 889, 899 (Bankr.E.D.Pa.1988), was distinguished because the mortgage document there expressly allowed a charge for "abstracts and title reports." Our holding that a $156.00 charge identical to that charged here could be imposed upon the Debtor-mortgagor in *In re Smith,* 92 B.R. 127, 132–33 (Bankr.E.D.Pa.1988), despite lack of evidence of the legitimacy of same, was distinguished because there, *id.* at 129, allegedly unlike here, the foreclosure proceeding had proceeded to judgment, and the title report was necessary to further the execution process.

We note, at the outset, that, since the Debtor is seeking to cure arrearages rather than liquidating her entire mortgage balance in her Chapter 13 Plan, 11 U.S.C. § 506(b) is inapplicable. *Vitelli, supra,* 93 B.R. at 894–95; *Nickleberry, supra,* 76 B.R. at 420–21; and *In re Small,* 65 B.R. 686, 689–92 (Bankr.E.D.Pa.1986), *aff'd,* 76 B.R. 390 (E.D.Pa.1987). Nevertheless, the terms of the parties' contract and the applicable state law, most notably Act 6 of 1984, 41 P.S. § 101, *et seq.,* are relevant in determining whether a mortgagee can assess certain fees, costs, and charges against a mortgagor, irrespective of the inapplicability of 11 U.S.C. § 506(b). *Vitelli, supra,* 93 B.R. at 893; and *Small, supra,* 65 B.R. at 962–93.

The most clearly applicable state law is 41 P.S. § 404(b)(3), which allows a mortgagee to collect, as a condition of curing a default, "the reasonable costs of proceeding to foreclosure as specified in writing by the residential mortgage lender actually incurred to the date of payment." The title report costs in issue were stipulated to have been actually incurred. The most significant questions are whether they are authorized by the particular mortgage document and whether they are reasonable.

The mortgage document is certainly not as clear in allowing the mortgagee to pass its title report costs through to the mortgagor as it might have been. The most positive statements in the Mortgage merely authorize the Mortgagee's recovery of "costs of suit" and "recoverable sums." However, we note that our brother, Judge Fox, in a recent Memorandum in *In re Herbert,* Bankr. NO. 88–10767F, slip op. at 2 (Bankr.E.D.Pa. April 5, 1989), held

---

**2.** The test developed is that the matter sought to be recovered must be (1) allowable under the terms of § 506(b), *i.e.,* the debt must be oversecured; (2) provided for in the parties' agreement; (3) reasonable; and (4) allowable under pertinent state law.

that a mortgage form apparently identical to or very like that of the Mortgage here, which merely authorized collection of "costs of suit" to the mortgagee, was sufficient to authorize collection of a $156.00 cost of a title report by the mortgagee. In his reasoning process, Judge Fox noted several reasons why he believed that, practically, a title report fee was sufficiently necessary to a mortgagee proceeding with a foreclosure that it could be assumed to be included in even this very general description of charges which a mortgagee could impose upon its mortgagor. Recited were the need of the mortgagee to advise other lienholders of the sale, *see* Pennsylvania Rule of Civil Procedure (hereinafter "Pa.R. Civ.P.") 3129(a)(2)(ii), (iii), (b), (f), and to ascertain whether a federal tax lien had been entered against any party defendant, in which case the federal government was required to be added as a party defendant. *See* 26 U.S.C. § 7425; and 28 U.S.C. § 2410(a)(2).

■ As we analyze Judge Fox's *Herbert* Memorandum, we find a distinct emphasis on the reasonability of the charge imposed, and a de-emphasis on whether the charge is specifically designated by name in the language of the mortgage. We thoroughly agree with this emphasis. It does not seem logical to cause the mortgagor's liability to pay a mortgagee's cost of a title report prior to foreclosure to turn on the precision of phraseology of an obscure clause in the mortgage document.

Moreover, such a clause, is, in most instances involving individual home buyers, an aspect of a form prepared exclusively by the mortgagee which is in no sense negotiated or bargained for with the mortgagor. Such a clause is, then, a classic adhesion contract. It seems illogical to provide that the ability of a mortgagee to pass through costs rests largely on the vagaries of an element entirely in the control of the mortgagee. It seems much more fair to emphasize the reasonability of a particular charge rather than the presence of certain wording in an adhesion contract.

It might be argued that, since the mortgage is an adhesion contract, it is inexcusable for the mortgagee to fail to protect itself as to all charges which it seeks to impose upon the mortgagor by very precise language. Certainly, in order to allow a mortgagee to recover same from the mortgagor, a mortgage must include some provision allowing the costs in issue to be imposed upon the mortgagor, no matter how "reasonable" such an imposition is. However, we do not believe that it is proper to emphasize precise wording of the mortgage alone, at the expense of analysis of the reasonability of what is authorized. Since the process of drafting the contents of a mortgage form are almost exclusively in the control of the mortgagee, placing the issue of what is chargeable solely on the basis of the precise provisions of the mortgage would permit the mortgagee to engage in gross overreaching on the mere basis of clever draftsmanship. If the effect of a particular clause in the mortgage were the only factor to be considered, a well-advised mortgagee could, ultimately, place itself in a position to extend pass-throughs to mortgagors which we would otherwise be extremely disinclined to allow.

A case in point was a matter to which we recently resolved with a short, unpublished Memorandum, *In re Grant*, Bankr. No. 86–03965, 1989 WL 33586 (Bankr.E.D.Pa. April 6, 1989). There, a mortgagee had filed a rather precipitous motion for relief from the automatic stay in order that it could proceed to foreclose upon the debtor's home. The debtor, in addition to having a huge equity in his home, had cured all post-petition arrears with a lump-sum payment prior to the hearing. Nevertheless, the mortgagee was unwilling to withdraw the stay relief motion because of a claimed entitlement to its reasonable attorneys' fees incurred in preparation of the stay motion. Supporting the mortgagee's claim was a clause in the mortgage, much broader and more specific than the clauses of the Mortgage quoted at pages 294–95 *supra*, which expressly provided that the Mortgagee could recover fees incurred in bankruptcy.

In *Vitelli, supra*, 93 B.R. at 894–97; and *Nickleberry, supra*, 76 B.R. at 423–26, we

had previously expressed our distinct disinclination to allow mortgagees to pass through costs for post-petition services delivered in connection with proceedings in the bankruptcy court to mortgagors. The question present in *Grant* was whether such reimbursement should nevertheless be allowed if the mortgage expressly so provided. We answered the question in the negative in *Grant,* due principally to our finding that the particular actions of this mortgagee had not been reasonable. However, also affecting our decision was our belief that the emphasis on whether certain charges should be passed through to the mortgagor should be based upon whether the general category of the reimbursement sought should be permissible. We were, of course, disinclined to allow reimbursements in the general category of post-petition services.

■ In the instant case, we agree with both the general approach and result reached by Judge Fox in *Herbert.* One of the most significant aspects of a mortgage foreclosure action is naming all of the proper parties. *See* Pa.R.Civ.P. 1144, 1147(3); 3 GOODRICH–AMRAM 2d (hereinafter "GA") 457–66 (1976); and 22 STANDARD PA. PRACTICE 2d (hereinafter "SPP") 477–86 (1984). Not only must the mortgagor be named, but the real owner, the grantee of the last known deed, any known heirs of a deceased mortgagor, and any terre-tenant must be joined as defendants as well. GA, at 458–62; and SPP, at 478–84. The United States of America, if a tax lienholder, must be joined, as Judge Fox noted in *Herbert.* GA, at 458; and SPP, at 478. A title report will obviously address and resolve any "parties problems." A title report and title insurance regarding such important and potentially problematical issues, appear reasonable measures to reduce the risk of error.[3]

As the Mortgagee points out in its Brief, a title report will also uncover any prior and junior lienholders, who must be notified of any foreclosure. Furthermore, as Judge Fox noted in *Herbert,* Pa.R.Civ.P. 3129(a)(2)(ii), (iii), (f), (b), requires that all lienholders must be notified of any execution of sale. As Judge Fox further observed in *Herbert, supra,* slip op. at 2 n. 1, Pa.R.Civ.P. 3129 has been amended, effective July 1, 1989, but the only effect of the amendment is to more clearly spell out information required in certain circumstances.

The Mortgagee also points out that a title report will ascertain whether a mortgagor has filed a bankruptcy petition. This information is significant if the mortgagee wishes to avoid instituting a proceeding which, however innocently brought in violation of the automatic stay, may be void. *See In re Ward,* 837 F.2d 124, 124–26 (3d Cir.1988); *In re Boston Business Machine,* 87 B.R. 867, 870 (Bankr.E.D.Pa. 1988); and *In re Clark,* 69 B.R. 885, 889–81, *modified,* 71 B.R. 747 (Bankr.E.D.Pa. 1987).

In *Vitelli, supra,* 93 B.R. at 893–94, and *Smith, supra,* 92 B.R. at 132, we allowed mortgagees to pass through title report costs to mortgagors even though the evidence supporting the reasons and amounts requested for such costs was virtually nonexistent. These are the only decisions of this court, except for *Herbert,* addressing the issue. It seems to us that the pertinent Pennsylvania law requires detail which includes all aspects of the "evidence of the state of the record title," as the *Bertsch* case indicated was required in Ohio. None of these decisions support the position of the Debtor here.

Since applicable state law is a significant element here, we also turned to state court decisions interpreting Act 6 to ascertain whether any of them discussed the element of title report costs. There, we found only a statement by highly-respected Philadelphia Common Pleas Judge Abraham J. Gafni in *Influential Savings & Loan Ass'n v.*

---

3. In her Brief, the Debtor suggests, without any basis on the record to support our so finding, that a title search "could be performed by an experienced paralegal in no more than 30–45 minutes at a much lower cost" than the $156.00 figure sought here. A title search performed in such a manner would of course not include the aspect of title insurance, which seems to us to be a reasonably justified acquisition.

*Valentine,* 25 Pa.D. & C.3d 760, 766 (Phila. Co.C.P.1982), that "title report costs" are among the reasonable costs of foreclosure referenced in 41 P.S. § 404(b)(3).

It is therefore clear to us that a title report, backed up by title insurance, is of significant practical benefit to a mortgagee at the outset of a foreclosure proceeding. All of the courts addressing the subject of the pass-through of such costs to the mortgagor have either expressly held or implicitly assumed that the pass-through of such costs is reasonable. Since we believe that emphasis on the reasonability of the costs sought to be imposed is the most significant factor in considering all attempts by mortgagees to effect pass-throughs to mortgagors, these considerations greatly influence us in reaching our decision here.

We therefore conclude that the Mortgagee's imposition of a $156.00 cost for performing a title search on the Debtor's property in the course of a foreclosure proceeding is an allowable item of costs in its proof of claim. Therefore, the Mortgagee's proof of claim will be allowed in the amount of $4,791.34, which includes this item.