## In re Marvin BURWELL, a/k/a Marvin D. Burwell, Debtor.

### Bankruptcy No. 89–10479S.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 1, 1989.

Roderick Mathewson, Norristown, Pa., for debtor.

William Meehan, Philadelphia, Pa., for FNMA.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Resolving the merits of the instant Objections of the Debtor to the Proof of Claim of the Debtor's mortgagee, the Federal National Mortgage Association (hereinafter "FNMA"), requires us to address one issue we had not considered heretofore: the right of a mortgagee to impose fees for performing inspections of the mortgaged premises upon a debtor-mortgagor. We hold that such fees are not as inherently reasonable or necessary to foreclosure as the mortgagee's cost of obtaining a title report of the property in foreclosure, and that, if challenged, such inspection fees cannot be recovered from the mortgagor unless the mortgagee meets its burden of proving such charges are both permissible under the mortgage documents, reasonable, and allowable under state law. In the instant controversy, while we reaffirm our holding in *In re Garnett*, 99 B.R. 293 (Bankr.E.D.Pa.1989), that a title report cost of $156 included in FNMA's claim can be imposed upon the Debtor, we shall disallow the inspection fees of $60, as well as disallowing unauthorized additional charges totalling $90, and reduce FNMA's "claim" for arrearages to $4,597.06.

The Debtor, MARVIN BURWELL, a/k/a MARVIN D. BURWELL, filed the instant Chapter 13 bankruptcy case on February 2, 1989. The initial Confirmation hearing, scheduled on October 19, 1989,

was continued to October 26, 1989, the date of the hearing on this contested matter. On the latter date, the Confirmation hearing was further continued until December 5, 1989. Herein, we postpone it slightly, in order to avoid a further continuance, until December 7, 1989.

■ FNMA filed a secured Proof of Claim in this case on July 18, 1989, setting forth therein the Debtor's alleged arrearages of $4,747.06.[1] At the hearing of October 26, 1989, the only witness, Joseph O'Connor, foreclosure manager of Boulevard Mortgage Co., apparently the servicing agent in this transaction for FNMA, testified that the components of this figure were as follows:

| | |
|---|---:|
| Principal, computed for nine months at the rate of the payment due of $428, plus $10 monthly as a cushion for future tax and insurance escrow increases | $3,942.00 |
| Late charges | 154.08 |
| Attorneys' fees | 200.00 |
| Court costs to file a foreclosure action which was pending at the time of the bankruptcy filing | 127.50 |
| Title Search performed in connection with the above foreclosure action | 156.00 |
| 8 property inspections at $7.50 each | 60.00 |
| Accumulated late charges | 107.48 |
| | $4,747.06 |

■ On September 7, 1989, the Debtor filed Objections to FNMA's Proof of Claim, which, by the hearing date, were confined to the following: (1) The $10 monthly increment to the Principal; (2) The title search charge; and (3) the inspection fees.[2] At the hearing, Mr. O'Connor was unable to muster any logical basis for making the $10 monthly increment to the payments, claiming that his company was making these charges simply as a favor to the Debtor to cushion later tax increases and would agree to deduct the total of $90 of extra charges from the Claim if the Debtor renounced this alleged beneficence.[3]

Although the Debtor's counsel argued warmly that the mortgage documents did not authorize the title search charge, we note that the clauses of the instant mortgage document which allegedly permit this charge are precisely the same as those which were contained in the mortgage in issue in *Garnett, supra. Accord, In re Herbert,* Bankr. No. 88–10767F (Bankr.E.D.Pa. April 5, 1989) (FOX, J.). The charge of $156.00 is precisely the same as that allowed to the mortgagee in *Garnett.* Since we choose not to reconsider our result in *Garnett,* this aspect of the Debtor's Objections must fail.

However, FNMA's ability to pass through its inspection fee charges presents an issue we have not considered previously. Our examination of our previous decisions indicates that such charges have not typically been requested by mortgagees in the

1. As we pointed out in *In re Vitelli,* 93 B.R. 889, 894 (Bankr.E.D.Pa.1988); and *In re Small,* 65 B.R. 686, 689–92 (Bankr.E.D.Pa.1986), *aff'd,* 76 B.R. 390 (E.D.Pa.1987), a demand for arrearages due on a mortgage is not properly designated as a "secured claim." A "secured claim" would represent the entire balance due on a long-term obligation such as the instant mortgage.

2. We are somewhat puzzled at the distinction between "Late Charges" and "Accumulated Late Charges" on the Proof of Claim, and hence we are uncertain what distinction there is between the two and how FNMA computed same. *See In re Jordan,* 91 B.R. 673, 677–81, 685–88 (Bankr.E.D.Pa.1988). However, the Debtor has not challenged these components of the Proof of Claim and we cannot consider the validity of these charges. *Compare id.* at 684–85. Of course, the

Debtor has also not raised any recoupment claims under the federal Truth–in–Lending Act, 15 U.S.C. § 1601, *et seq.,* which would appear available to him. *See, e.g., In re Dangler,* 75 B.R. 931 (Bankr.E.D.Pa.1987).

3. What FNMA was effectually accomplishing in charging this payment increment was increasing the escrow payable by the Debtor to it beyond what was authorized in the mortgage documents. Since there is a considerable question as to whether escrows of any sums are not unfairly beneficial to mortgagees, who can hold and possibly use such sums for certain purposes, *see Buchanan v. Brentwood Federal Savings & Loan Ass'n,* 457 Pa. 135, 139–57, 320 A.2d 117, 120–29 (1974), these charges are indefensible on the basis that they are imposed solely for the mortgagor's benefit.

cases in which we considered the issue of permissible cost pass-throughs to debtor-mortgagors. *See Vitelli, supra,* 93 B.R. at 899–900; and *In re Smith,* 92 B.R. 127, 132–33 (Bankr.E.D.Pa.1988), *rev'd in part on other grounds sub nom. Smith v. Kissell Co.,* 98 B.R. 708 (E.D.Pa.1989). We note that, in *Vitelli,* we disallowed the mortgagees' attempt to impose charges for undesignated "praecipes and motions," postage, telephone, and duplicating, 93 B.R. at 899–900, while, in *Smith,* we excised a charge for "notaries." 92 B.R. at 133. In both cases, however, we allowed the mortgagees to pass through title search charges without extensive discussion of the issue. In *Garnett,* we reasoned that title search charges were permissible because title reports were, for a variety of reasons, essential to a mortgagee before it could properly commence a foreclosure action. 99 B.R. at 297. Also, the state courts interpreting the applicable state law had determined such costs to be reasonably imposed upon mortgagors. *Id.* at 297–98.

Our respected colleague, Judge Fox, has recently addressed the issue of pass-through of inspection fees in an unpublished Memorandum in *In re Davis,* Bankr. No. 89–10290F, slip op. at 3–5 (Bankr.E. D.Pa. Sept. 27, 1989). There, Judge Fox allowed a mortgagee to pass through charges for 27 inspections totalling $162.00 to the mortgagor. Judge Fox relied heavily upon clauses of the mortgage according the mortgagee the right " 'to enter upon the Premises at any reasonable hour to inspect the order, condition and repair thereof' " and providing that

> "If Mortgagor fails ... to keep Premises in repair ... or commits or permits waste, then Mortgagee, at its option ... may make such repairs and take such steps as it deems advisable to prevent or cure such waste.... Mortgagor will pay to Mortgagee ... all sums of money advanced ... pursuant to this paragraph ... and such sums ... shall be secured hereby."

Slip op. at 3. Judge Fox also notes that he had disallowed inspection fees in a previous case in which the mortgage documents did not authorize same, *In re Rorie,* 98 B.R. 215, 221 (Bankr.E.D.Pa.1989), but that his predecessor, former Chief Judge Goldhaber, had allowed such fees as a component of "foreclosure costs" in *In re Cervantes,* 67 B.R. 816, 821 (Bankr.E.D.Pa. 1986). Judge Fox noted that a clause permitting "foreclosure costs" as a reimbursable item probably exists in all mortgages, *Davis, supra,* Slip op. at 4, and he disapproved of the reasoning of *Cervantes* in a footnote. *Id.* at 4 n. 4. Therein Judge Fox observed that, unlike title report charges, inspection fees are not logically necessary to comply with the Pennsylvania procedural rules governing foreclosures.

■ In *Garnett, supra,* 99 B.R. at 295 & n. 2, and elsewhere, *see, e.g., In re Orsa Associates, Inc.,* 106 B.R. 418, 425 (Bankr. E.D.Pa.1989); *Vitelli, supra,* 93 B.R. at 894; and *In re Tashjian,* 72 B.R. 968, 974 (Bankr.E.D.Pa.1987), we have developed the following four-prong test, all of the prongs of which must be satisfied by a secured creditor before it is permitted to pass charges for costs or attorneys' fees through to the debtor-obligor in a proof of claim:

> "such fees [must be] (1) allowable under the terms of § 506(b); (2) provided for in the parties' agreement; (3) reasonable; and (4) allowable under pertinent state law.".

Here, the first prong, *i.e.,* establishing that the claim is oversecured, is inapplicable, because we are dealing with a demand for arrearages, not a "true" secured proof of claim. *See Vitelli, supra,* 93 B.R. at 894–95, 899–900, and page 64 n. 1 *supra.* Therefore, FNMA need only satisfy the second, third, and fourth prongs of this test to impose any particular charge upon the Debtor in the instant setting.

■ The second prong of this test requires us, as Judge Fox suggested in *Davis, supra,* to carefully examine the mortgage document. Here, FNMA contended, at the hearing, that the following clause of the instant mortgage authorized the pass-through of inspection fees:

> 6. ... the Mortgagor will pay all ground rents, taxes, assessments, water

rates, and other governmental or municipal charges, fines or impositions, for which provision has not been made hereinbefore and that he will promptly deliver the official receipts therefor to the Mortgagee, and in default thereof the Mortgagee shall have the right to pay same. The Mortgagee shall have the right to make any payment which the Mortgagor should have made, and the Mortgagee may also pay any other sum that is necessary to protect the security of this instrument. All such sums, as well as all costs, paid by the Mortgagee pursuant to this instrument, shall be secured hereby and shall bear interest at the rate set forth in the note secured hereby from the date when such sums are paid.

FNMA apparently reasons that the inspection fee is an investment "necessary to protect the security of the instrument."

The difficulty with FNMA's reasoning is that it ignores the context in which this language appears in the above clause. Paragraph 6 addresses governmental fees which may encumber the property, and, if the mortgagor fails to pay same, gives the mortgagee a right to pay them and then pass these payment obligations along to the mortgagor. It is *not* addressing any sort of fees to discover or remedy conditions extant on the property which could deflate its value as security, which presumably the inspections are performed to uncover. Therefore, we believe that the mortgage here does *not* contain a specific provision authorizing inspection fees, like the mortgage considered by Judge Fox in *Rorie, supra,* 98 B.R. at 221. Following Judge Fox in declining to accept the reasoning of *Cervantes,* 67 B.R. at 821, we find that the instant mortgage is distinguishable from that containing clauses which authorized such fees which was considered by Judge Fox in *Davis.* Therefore, the second prong of the four-prong test is not met, as Judge Fox found that it was in *Davis,* and the inspection fees must be disallowed here under the reasoning of *Davis* as well as the other cases cited herein.

We should note, however, that satisfaction of the third and fourth prongs of the test is also absent. Moreover, in *Garnett, supra,* 99 B.R. at 296–98, we expressed the view that the third prong of the test, *i.e.,* the reasonableness of the charge imposed, should be the stronger determining factor than the second prong, *i.e.,* the presence or wording of an obscure clause in a classic adhesion contract, *i.e.,* the typical homeowners' mortgage.

Unlike the title search in issue in *Garnett,* we can see little legal necessity for the mortgagee's making superficial periodic inspections to a mortgaged premises. Certainly, such inspections are unlikely to garner information which, like a title report, are essential to proper prosecution of a foreclosure suit. *Compare Garnett,* 99 B.R. at 297. It may be a good policy to perform such inspections. It may be a better policy to formally appraise a property periodically, or interview the mortgagor to determine his financial health at any point in time. However, these activities do not evince the necessity of the service to the protection of the mortgagee's rights that we believe is essential to allow them to be passed through to the mortgagor.

■ In making this assessment, we are not foreclosing the possibility of a mortgagee's convincing us that, in a given specific factual situation, inspections might be sufficiently necessary such that we would allow a mortgagee to pass them through to a debtor-mortgagor, *e.g.,* if the premises were vacant or were subject to waste because of certain specific circumstances. However, in *Orsa Associates, supra,* 106 B.R. at 423, quoting *In re Joshua Slocum, Ltd.,* 103 B.R. 601, 605–06 (Bankr.E.D.Pa. 1989), we allocated the burden of proof thusly in determining Objections to a Proof of Claim:

"We have frequently considered claims for attorney's fees, *see, e.g., In re United Nesco Container Corp.,* 68 B.R. 970, 973–74 (Bankr.E.D.Pa.1987); and *In re Nickleberry,* 76 B.R. 413 (Bankr.E.D.Pa. 1987); late charges, and other penalties, *see In re Jordan,* 91 B.R. 673 (Bankr.E. D.Pa.1988); and elements of costs, *see,*

*e.g., In re Garnett,* 99 B.R. 293 (Bankr. E.D.Pa.1989); *In re Vitelli,* 93 B.R. 889, 897–901 (Bankr.E.D.Pa.1988); and *In re Smith,* 92 B.R. 127, 132–33 (Bankr.E.D. Pa.1988); *rev'd in part on other grounds sub nom. Smith v. Kissell Co.,* 98 B.R. 708 (E.D.Pa.1989), in the context of objections to proofs of claims. We set forth the relative burdens of proof of the debtor and the claimant in the context of objections to proofs of claim in *In re Lewis,* 80 B.R. 39, 40–41 (Bankr.E.D.Pa. 1987). There, we emphasized that, if the objector presents evidence tending to disprove the objection, the otherwise-extant presumption that the claim is *prima facie* allowable vanished. *Id.* at 41. *See also Jordan, supra,* 91 B.R. at 683–84; and *In re Celona,* 90 B.R. 104, 108–09 (Bankr.E.D.Pa.1988), *aff'd sub nom. Celona v. Equitable Nat'l Bank,* 98 B.R. 705 (E.D.Pa.1989)...."

██ Here, the Debtor has placed the reasonability of the inspection fees in issue. Therefore, consistent with the following reasoning set forth in *Jordan, supra,* 91 B.R. at 684, as to a claimant's assertion of a right to questionable late charges, we believe that FNMA has the burden of proving that the inspection fees which it attempted to pass through were reasonable:

Practically, the burden of proving a claimant's right to late charges in its claim could scarcely be allocated otherwise. A debtor could hardly be expected to prove a negative, *i.e.,* to present evidence *disproving* the unknown reasoning and rationale of a claimant in contending that late charges which the debtor denies are justified are in fact due. The logic of allocation of the burden of proof is that it is necessarily placed on the party who has the most knowledge and best means of proof on a given issue at his disposal. *Compare In re New York City Shoes, Inc.,* 86 B.R. 420, 425 (Bankr.E.D.Pa. 1988) (landlord has burden of proving his own diligent efforts to replace an errant tenant); *In re Crompton,* 73 B.R. 800, 808–09 (Bankr.E.D.Pa.1987) (debtor has burden of proving that his own statement of income and expenses satisfies the requirement that all of this projected disposable income is being paid into a Chapter 23 plan); and *In re Furlow,* 70 B.R. 973, 978 (Bankr.E.D.Pa.1987) (debtor has burden of proving the logic of his reasons for discriminating in his treatment of creditors). Clearly, the party having the most knowledge of computation of the late charges in issue here and the party upon which the burden of proof must therefore be placed is the Claimant.

The only burden of the Debtor is to raise a particular issue in reference to a claim.

.  .  .  .  .

FNMA, though calling Mr. O'Connor as a witness, could not or at least did not establish, through him, any specific factual situation here which rendered the inspections of the Debtor's property necessary. In fact, we are uncertain when the inspections were performed and at what intervals they were performed, let alone why they were performed. Therefore, we would be strongly disinclined to allow these charges irrespective of what the mortgage documents provided. *Cf. Garnett, supra,* 99 B.R. at 296–97 (this court would be disinclined to allow a mortgagor to receive compensation for post-petition services even if there were a specific authorization for same in the mortgage documents). Therefore, the inspection fees must be disallowed in this instance under the third prong of the four-prong test.

Finally, we question whether the final prong, *i.e.,* that the charge be allowable under pertinent state law, is met here, either. The applicable state law, 41 P.S. § 404(b), provides as follows:

(b) To cure a default under this section, a residential mortgage debtor shall:

(1) Pay or tender in the form of cash, cashier's check or certified check, all sums which would have been due at the time of payment or tender in the absence of default and the exercise of an acceleration clause, if any;

(2) Perform any other obligation which he would have been bound to perform in the absence of default or the exercise of an acceleration clause, if any;

(3) Pay or tender any reasonable fees allowed under section 406 and the reasonable costs of proceeding to foreclosure as specified in writing by the residential mortgage lender actually incurred to the date of payment.

(4) Pay any reasonable late penalty, if provided for in the security document. The only potentially-applicable clause of this statutory provision, which limits those costs that can be passed through to a mortgagor as a condition for curing arrearages, is 41 P.S. § 404(b)(3), which embraces "the reasonable costs of proceeding to foreclosure." Rejecting, as we do here and as did Judge Fox in *Davis*, the conclusion in *Cervantes* that inspection fees are a "cost of foreclosure," we must conclude that such costs cannot be passed through under the foregoing applicable state law. *Compare Garnett, supra*, 99 B.R. at 297–98; and *Influential Savings & Loan Ass'n v. Valentine*, 25 D. & C. 3d 760, 766 (Phila.Co.C.P.1982) (title report costs, being essential to proper prosecution of a foreclosure action, *are* reasonable costs of "proceeding to foreclosure," reimbursement of which can be demanded of a mortgagor as a condition for curing a mortgage default).

Therefore, we must deny FNMA's demand of $60 for inspection fees in its Proof of Claim. Having sustained an objection to a $90 component of the Claim, the Debtor's Objections as to $150 of FNMA's Proof of Claim must be sustained. An Order so providing, and requiring the Debtor to now prepare this case for Plan confirmation on December 7, 1989, will be entered.

## ORDER

AND NOW, this 1st day of November, 1989, upon consideration of the Debtor's Objections to the Proof of Claim of Federal National Mortgage Association (hereinafter "FNMA"), after a hearing of October 26, 1989, and the various arguments of counsel thereat, and in order to insure prompt administration of this case, it is hereby ORDERED AND DECREED as follows:

1. The Objections are SUSTAINED in part. The secured "Proof of Claim" of FNMA for arrears is reduced by $150, reflecting unauthorized charges for Principal ($90) and inspection fees ($60), and allowed in the amount of $4,597.06.

2. The Debtor shall resolve any outstanding impediments to confirmation either by filing further objections to proofs of claim, motions, and/or an amended plan or by some other means before the next listing, or this matter will be dismissed.

3. Any motions or amended plans contemplated shall be filed and served upon interested parties on or before November 7, 1989.

4. A final hearing on Confirmation and the Trustee's motion to dismiss shall be held on

THURSDAY, DECEMBER 7, 1989, at 10:00 A.M. in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106. The Debtor's counsel shall affix this hearing date on any notice of hearing received from the Clerk's office on any matters filed on or before November 7, 1989.

5. No further continuances of the Confirmation Hearing will be favored and this case may be dismissed on December 7, 1989, if a Plan cannot be confirmed on that date.